Dr. Joseph G. BUSSEY, Jr., M. D. and Amy Jackson, P. A., Plaintiffs-Appellants,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Resources, Defendant-Appellee.

No. 77–3224.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1980.

Richard L. Stumm, B. Lee Crawford, Jr., Atlanta, Ga., for plaintiffs-appellants.

William L. Harper, U. S. Atty., Nina L. Hunt, Robert J. Castellani, Asst. U. S. Attys., Carl H. Harper, Atty., HEW, Stephen P. Georgeson, Asst. Reg. Atty., Atlanta, Ga., for defendant-appellee.

Before TUTTLE, VANCE and KRAVITCH, Circuit Judges.

VANCE, Circuit Judge:

Appellants contend that the fifth amendment of the federal Constitution requires Medicare reimbursement, 42 U.S.C. § 1395 et seq., for paramedical services performed by physicians' assistants. The proper administrative forum rejected appellants' contention on its merits, and the district court dismissed the ensuing action for lack of subject matter jurisdiction. We affirm.

I.

Appellant Amy Jackson, a physician's assistant licensed by the State of Georgia, assists appellant Joseph G. Bussey, Jr., M.D., in surgical operations and in preoperative and postoperative care. Jackson performed several services under Dr. Bussey's supervision in connection with an operation on Ruby A. Mitchell. These included arrangement of preoperative tests, description to the patient of the surgical procedure, supervision of skin disinfection and similar surgical preparation, instruction in postoperative rehabilitation, and postoperative visits to the patient's hospital room for necessary tests. These tasks would have been performed by another physician had they not been done by a physician's assistant. Dr. Bussey sought reimbursement for Jackson's services as his "Surgeon's Assistant" in the amount of $115.00. He made this claim as assignee of Mitchell's Medicare claim, 42 U.S.C. § 1395u(b)(3)(B)(ii), and submitted it to the intermediate carrier for the Department of Health, Education and Welfare (as it was then entitled), Prudential Insurance Co. of America, see id. § 1395u; 42 C.F.R. § 405.801(a) (1978).

The carrier, then a hearing officer denied reimbursement for the physician's assistant expense on the ground that it was not covered under the Act or under the pertinent regulations and the Part B Intermediary Manual. That Manual, prepared by the Department of HEW for the use of intermediate carriers, interprets the Medicare Act,[1] which limits funding to physicians' services and other "services . . . of kinds which are commonly furnished in physicians' offices," 42 U.S.C. § 1395x(s)(2)(A), to deny funding for "services which traditionally have been reserved to physicians" and are instead "perform[ed] by a physician's assistant." Department of HEW, Part B Intermediary Manual § 2050.3 (formerly § 6103(B)).[2] The Manual, on the other

---

1. This provision defines reimbursable " 'medical and other health services' " to include

 services and supplies . . . furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills . . . . .

42 U.S.C. § 1395x(s)(2)(A). See also 42 C.F.R. § 405.231(b) (1978).

2. Section 2050.3 of the Manual provides in relevant part,

 B. *Services of Physician's Assistants.*—A new category of allied health personnel, known by various identifying titles, e. g., physician's assistant, medical specialty as-

hand, provides reimbursement for "the services of a nonphysician anesthetist." *Id.* § 2050.2 (formerly § 6103(A)).[3]

Appellants' complaint in federal district court alleged that the denial of coverage for physicians' assistants (1) constitutes a classification that contravenes the due process provision of the fifth amendment, in view of reimbursement for anesthetists, and (2) contradicts the language of the Medicare Act in violation of the due process clause of the fifth amendment. The district court dismissed the action for failure to state a claim because it found that the Act does not provide judicial review of administrative determinations regarding amounts allowed to claimants and that other jurisdictional statutes do not otherwise authorize review.

## II.

The dispositive question is whether this court has jurisdiction of these claims. The Medicare Act incorporates § 205(h) of the Social Security Act, 42 U.S.C. § 405(h). *Id.*

§ 1395ii. Section 205(h) restricts judicial review of agency determinations.

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought *under section 24* of the Judicial Code of the United States to recover on any claim arising under this title.

42 U.S.C.S. § 405(h); *see* 53 Stat. 1371 (1939) (emphasis added).[4] The latter sentence "precludes resort to federal-question jurisdiction for the adjudication of appellees' constitutional contentions" under the Social Security Act, *Weinberger v. Salfi,* 422 U.S. 749, 761, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975), and similarly "precludes all review of the Secretary's decisions by federal district courts brought under § 1331" for the Medicare Act, *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d 328, 331 (5th Cir.) (en banc), *cert.*

sistant, medical services assistant, MEDEX, clinical associate, Flexner (surgical assistant), nurse practitioner, etc., are being trained under various programs to assist or act in the place of the physician. Services performed by these physician's assistants in physicians' offices or in satellite offices include not only services ordinarily performed by the physician's nurse or other office assistant, e. g., taking blood pressures and temperatures, giving injections, changing dressings, but also services heretofore ordinarily performed by the physician himself, such as: routine physical examinations, minor surgery, assistance in major surgery, setting casts on simple fractures, reading X-rays, and other activities that involve an independent evaluation or treatment of the patient's condition.

. . . [T]he only basis for covering their services under Part B would be as services furnished "incident to" a physician's professional service (section 1861(s)(2)(A) of the Act). One of the various requirements that must be met for services to be covered under this provision is that they must be of kinds that are "commonly furnished" in physicians' offices. This limitation, like the other requirements discussed in A above, limits coverage to the services of nurses and other assistants that are commonly furnished as a necessary adjunct to the physician's personal in-office service. Thus, the performance by a physician's assistant of services which tradi-

tionally have been reserved to physicians cannot be covered under Part B even though all the other "incident-to" requirements are met.

**3.** Section 2050.2 provides in relevant part,

> [T]he services of a nonphysician anesthetist are covered under medical insurance when the anesthetist is the employee of an anesthesiologist who provides direct, personal, and continuous supervision of her services. . . . The services of a nonphysician anesthetist are also covered when she is an employee (either on a part- or full-time basis) of any surgeon (or other physician) who is rendering professional services during the operative procedure and directing her services. In both cases, the physician must include the charges for the anesthetist's services in his bill and these charges will be taken into account in determining the physician's reasonable charge.

**4.** The enacted section 205(h), quoted in the text, as amended, bars actions "under section 24 of the Judicial Code" of 1911. 53 Stat. 1371 (1939). The codifiers of the *United States Code* substituted two current section numbers; thus that codification prohibits actions "under sections 1331 or 1346 of Title 28." 42 U.S.C. § 405(h). Title 42 of the *United States Code* has not been officially adopted.

*denied,* 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978).

 Although the Social Security Act provides other statutory procedures for judicial review, 42 U.S.C. § 405(g), the Medicare Act does not incorporate those procedures, *Pushkin v. Califano,* 600 F.2d 486, 488 & n.3 (5th Cir. 1979); *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d at 330–32.[5] This does not create any due process problem when judicial review of a constitutional question is available in a damages action in the Court of Claims under 28 U.S.C. § 1491. *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d at 332; *see Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347,

351 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977).[6] Because review of any substantial constitutional question in the instant case in fact is available in the Court of Claims, we do not decide whether Congress has, or could constitutionally have, precluded judicial review of a substantial constitutional claim, an issue that the Supreme Court has not resolved.[7] *Pushkin v. Califano,* 600 F.2d at 492; *Dr. John T. MacDonald Foundation, Inc. v. Califano,* 571 F.2d at 331 n.5, 332.[8] We instead assess whether appellees have raised substantial constitutional issues to determine whether to transfer this action to the Court of Claims or to dismiss it for lack of subject matter jurisdiction.

---

5. The legislative history of the Medicare Act evinces that Congress intended to disallow judicial review of Part B claims regarding reimbursement amounts.

> [T]he bill does not provide for judicial review of a determination concerning the amount of benefits under part B where claims will probably be for substantially smaller amounts than under part A.

S.Rep.No.404, 89th Cong., 1st Sess. 54–55 (pt. 1) (1965), *reprinted in* [1965] *U.S.Code Cong. & Ad.News,* pp. 1943, 1995. That history does not require the conclusion that Congress intended to bar review in the Court of Claims of substantial constitutional issues. *See Dr. John T. MacDonald Fdtn., Inc. v. Califano,* 571 F.2d at 332. *See also* 42 U.S.C. § 1395ff(b)(1)(B).

6. Review is available in the Court of Claims if litigants can state a claim for actual or nominal damages, and the relevant question is whether the plaintiffs could have framed their federal court challenge as a damages action rather than whether they actually did. *Pushkin v. Califano,* 600 F.2d at 490; *American Ass'n of Councils of Med. Staffs of Private Hospitals, Inc. v. Califano,* 575 F.2d 1367, 1373 (5th Cir. 1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979). This holds true for Part B as well as for Part A actions. *Compare Pushkin v. Califano,* 600 F.2d at 490 (under Part B) *with Dr. John T. MacDonald Fdtn., Inc. v. Califano,* 571 F.2d at 332 (under Part A).

Appellants could have sought damages in their complaint, although they instead requested declaratory and injunctive relief. Judicial review of any substantial constitutional or statutory claim, therefore, is available in the Court of Claims under 28 U.S.C. § 1491.

7. There is some doubt about whether Congress has precluded judicial review under the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361. *See American Ass'n of Councils of Med. Staffs*

*of Private Hospitals, Inc. v. Califano,* 575 F.2d at 1373 (dictum). Because we hold that the constitutional claims raised are insubstantial and note that the Court of Claims has held that it has jurisdiction of this action, we do not resolve whether federal courts other than the Court of Claims have mandamus jurisdiction over a properly stated claim under section 1361. *See Association of Am. Med. Colleges v. Califano,* 569 F.2d 101, 112 (D.C.Cir. 1977); *RoAne v. Mathews,* 538 F.2d 852, 854 (9th Cir. 1976).

Jurisdiction clearly does not exist under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, which does not confer an independent basis of subject-matter jurisdiction, *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937), or under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* because "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action," *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977) (under Social Security Act); *accord, Dr. John T. MacDonald Fdtn., Inc. v. Califano,* 571 F.2d at 330.

8. *See also Califano v. Sanders,* 430 U.S. at 109, 97 S.Ct. 980; *Weinberger v. Salfi,* 422 U.S. at 762, 95 S.Ct. 2457; *American Ass'n of Councils of Med. Staffs of Private Hospitals, Inc. v. Califano,* 575 F.2d at 1372–73; *Springdale Convalescent Center v. Mathews,* 545 F.2d 943, 948 (5th Cir. 1977); *St. Louis Univ. v. Blue Cross Hospital Serv.,* 537 F.2d 283, 292 (8th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976); *Pacemaker Monitor Corp. v. United States Gov't,* 440 F.Supp. 473, 479 (S.D.Fla.1977); *Daytona Beach General Hosp., Inc. v. Weinberger,* 435 F.Supp. 891, 899–900 (M.D.Fla.1977).

## A.

The first issue is whether the disparate treatment of physicians' assistants and anesthetists contravenes the fifth amendment. The test for a statutory classification in the social welfare area challenged under the due process clause of that amendment is the same as the standard under the equal protection clause of the fourteenth amendment. *Weinberger v. Salfi,* 422 U.S. at 770, 95 S.Ct. 2457; *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). This classification does not implicate a constitutionally-suspect class or a fundamental constitutional right; therefore, "the classification is constitutional if it is rationally related to furthering a legitimate state interest" under the Medicare Act.[9] *Pushkin v. Califano,* 600 F.2d at 491. *Accord, Weinberger v. Salfi,* 422 U.S. at 769, 95 S.Ct. 2457 (under Social Security Act). "Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). *Accord, Pushkin v. Califano,* 600 F.2d at 491. Underinclusion that is not irrational does not violate the fifth amendment because "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949). *See Vance v. Bradley,* 440 U.S. 93, 108–09, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Weinberger v. Salfi,* 422 U.S. at 781, 95 S.Ct. 2457. Congress is entirely justified, as long as its action is not irrational, in providing for reimbursement under Medicare for some but not all of the vast spectrum of medical needs, and it is not required by due process or equal protection, upon choosing to fund some medical services, to fund all analogous medical services. *Pushkin v. Califano,* 600 F.2d at 491; *Rastetter v. Weinberger,* 379 F.Supp. 170, 172 (D.Ariz.1974) (three judge court), *aff'd sum.,* 419 U.S. 1098, 95 S.Ct. 767, 42 L.Ed.2d 795 (1975).[10] The district court in *Rastetter* sustained Medicare reimbursement of physicians but not of chiropractors and naturopaths as being rationally-based, and the Supreme Court summarily affirmed this decision.

> The Medicare program, however, is not a comprehensive health insurance program and still contains significant gaps in its coverage . . . in areas of immunizations, drugs, therapeutics, optometrics, and dental care services. Because Medicare does not make all health services available to the elderly does not necessarily create a violation of equal protection . . . .

379 F.Supp. at 172.

> Congress properly based its exclusion of chiropractors and naturopaths upon a rational legislative basis . . . .

*Id.* at 175. This circuit in *Pushkin* upheld Medicare reimbursement of physicians but not of optometrists even in medical areas in which their diagnostic services overlapped.

> [I]t cannot be said that Congress acted irrationally in providing reimbursement distinctions between the diagnostic services provided by a medical doctor and those provided by an optometrist. The failure to provide equal benefits to every conceivable interest in enacting reform legislation does not violate the equal protection clause.

600 F.2d at 492. We conclude that appellants have not raised a colorable constitutional claim that the Medicare denial of reimbursement for physicians' assistants

---

**9.** Such a classification is unconstitutional only if " 'the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' " *Barry v. Barchi,* —— U.S. ——, ——, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979) (*quoting Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). *Accord, Pushkin v. Califano,* 600 F.2d at 491.

**10.** *See also Poelker v. Doe,* 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977) (city financing of hospital services for childbirth does not require same for nontherapeutic abortions under Medicaid Act); *Maher v. Roe,* 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977) (state funding of childbirth does not require funding of nontherapeutic abortions under Act).

but not for anesthetists is an irrational classification. Because that "constitutional issue is clearly an insubstantial one," we dismiss the fifth amendment challenge to the Manual's classification for lack of jurisdiction. *Pushkin v. Califano,* 600 F.2d at 492. *See, e. g., McLucas v. DeChamplain,* 421 U.S. 21, 32, 95 S.Ct. 1365, 43 L.Ed.2d 699 (1975); *Hagans v. Lavine,* 415 U.S. 528, 536–38, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

### B.

 The second issue is whether the Manual's denial of Medicare reimbursement for physicians' assistants contradicts the statutory language. The Act appears to authorize reimbursement for physicians' assistant services as involved here, because they are "furnished as an incident to a physician's professional service," are "commonly . . . included in the physicians' bills," and are "kinds which are commonly furnished in physicians' offices" including a surgeon's operating room. *See* 42 U.S.C. § 1395x(s)(2)(A). The third of these requirements seems to require that the service is commonly furnished by *some* qualified person incident to a physician's treatment, but not to require that the service is performed only by a physician if it is a traditional physician's function or performed only by a paramedical worker if it is not a traditional physician's function. Congress indeed may not have intended to deny reimbursement for the lower cost of a paramedical worker such as a physician's assistant acting as first surgical assistant while providing reimbursement for the much higher cost of an underutilized physician acting in that capacity in these days of soaring medical costs and widespread physician shortages. Because this court lacks jurisdiction, we do not resolve the issue whether the Manual, as an interpretive rather than a legislative regulation, is inconsistent with the Medicare Act. *See Batterton v. Francis,* 432 U.S. 416, 425 & n.9, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977); *Morton v. Ruiz,* 415 U.S. 199, 234–36, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). We dismiss the challenge to the Manual's interpretation of the Medicare Act for lack of subject matter jurisdiction. *See Pushkin v. Califano,* 600 F.2d at 492; *American Association of Councils of Medical Staffs of Private Hospitals, Inc. v. Califano,* 575 F.2d 1367, 1371–72 (5th Cir. 1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979) (challenge to interpretive manual).

AFFIRMED.