Margarette CURTIS et al.,
Plaintiffs-Appellees,

v.

Alvin J. TAYLOR, Individually and as Secretary of the State of Florida, Department of Health and Rehabilitative Services, Defendant-Appellant.

Margarette CURTIS et al.,
Plaintiffs-Appellees,

v.

Alvin J. TAYLOR et al., Defendants,

Alvin J. Taylor, Defendant-Appellant.

Nos. 78–2203, 79–2244.

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1980.

---

Chester G. Senf, Asst. Gen. Counsel, Charles T. Collett, Atty., Florida Dept. of Health & Rehabilitative Services, Tallahassee, Fla., for defendant-appellant.

Stephen Maher, Perrine, Fla., Marcia K. Cypen, Legal Services of Greater Miami, Miami, Fla., for Legal Services of Greater Miami, Inc.

David Frederic Chavkin, Washington, D.C., and Lucien Wulsin, Jr., Santa Monica, Cal., for National Health Law Program.

Before RUBIN and POLITZ, Circuit Judges, and POINTER *, District Judge.

---

* District Judge of the Northern District of Alabama, sitting by designation.

ALVIN B. RUBIN, Circuit Judge:

These appeals concern the adequacy of notice of changes in benefits provided by a state Medicaid program and the validity of a limitation in benefits for physicians' services to three visits per month.

In October, 1977, Florida mailed a notice [1] to all state Medicaid recipients informing them that, effective November 1, 1977, it was instituting several reductions in its Medicaid program because of a deficit in its Medicaid budget. Six days later, plaintiffs filed a class action on behalf of all Florida Medicaid recipients seeking an injunction against the proposed reductions and a declaration that they were illegal.

In these consolidated appeals Florida challenges two decisions by the district court granting summary judgment on separate claims of the complaint and enjoining implementation of the proposed reductions. We dismiss the appeal involving only the adequacy of notice (No. 78–2203) as moot.

We hold that the state's payment for physicians' services was sufficient to "reasonably achieve" the purpose of such care even though limited to three visits per month, and, therefore, reverse the court's decision on the substantive change in benefits. (No. 79–2244).

I. Adequacy of Notice—No. 78–2203

In April 1978, the district court granted a summary judgment on that part of the complaint that contended the notice to Medicaid recipients was insufficient to comply with federal regulations. The complaint alleged that a notice covering a number of reductions in Medicaid benefits mailed to Medicaid recipients in October did not satisfy federal requirements for notice prior to state Medicaid reductions. On March 1, 1978, Florida had mailed a revised notice relating to only one of the proposed reductions, a requirement that each Medicaid recipient pay 50¢ on each drug prescription.[2]

---

1. The notice read:

Effective November 1, 1977 because of the projected Medicaid budgetary deficit (lack of money) it will be necessary to make the following changes in the Medicaid Program:
1. Physicians Services—Outside the hospital—
 a. Three (3) doctor visits per month (except for emergencies).
 b. One consultation per medical specialty.
 c. Flat fee of $25.00 per physician consultation.
2. Inpatient Hospitalization—No payment for admissions on Fridays or Saturdays (except for emergencies).
3. Nursing Home Care—Payments will be rounded out.
4. No payments for dental examinations or dental education.
5. Prescribed Medicine—There will be a 50 cents charge to the recipient for each prescription.

As required by law, a public hearing must be conducted on such changes if requested by an interested person. If you desire to voice an opinion on these changes at a public hearing, you are welcome to attend or to send your comments to Medical Services whose address is listed below. If you wish copies of these changes, please advise Medical Services, 1311 Winewood Boulevard, Tallahassee, Florida, 32301 within fourteen (14) days of the date of this notice. A hearing, if requested, will be held to discuss these changes on December 15, 1977, beginning at 9:00 A.M. in

Building 3, Room 218, Winewood Complex, Tallahassee, Florida 32301.

2. The full text of this notice was:

You are advised that the fifty-cent ($.50) prescription co-payment charge will not be required during the month of March, 1978.

Effective April 1, 1978, each Medicaid recipient shall be required to pay fifty cents ($.50) co-payment for each prescription covered by Medicaid. This means that you will be required to pay fifty cents ($.50) of the cost of each prescription.

The reason for this action is to prevent the exhaustion of Medicaid appropriations. The Florida Administrative Code, Section 10C–7.-42(1), has been amended and filed with the Secretary of State to be effective April 1, 1978. This regulation requires a fifty-cent ($.50) co-payment charge for prescriptive drugs.

This regulation constitutes a change in state law affecting the class consisting of every person receiving Medicaid benefits. If you believe that this agency action constitutes an individual incorrect grant computation, you may appeal this action and request a hearing. If your request for hearing is received by the Department within ten (10) days of this notice, a group hearing will be held to determine the issue of incorrect individual grant computations on Friday, March 17, 1978, in Room 217, Building 1, 1323 Winewood Boulevard, Tallahassee, Florida 32301, at 10:00 A.M. The request for hearing

Finding the original notice (which recited a number of proposed reductions) inadequate, the district court rendered a summary judgment on this count and enjoined Florida from implementing any of the changes until it provided adequate notice. Simultaneously, the district court granted a preliminary injunction prohibiting the state from implementing the 50¢ payment per drug prescription on the basis that the March 1 revised notice was also inadequate.

On April 29, 1978, Florida issued a notice covering all the reductions. The district judge and the plaintiffs found this notice acceptable. Florida thereby fully complied with the judgment below. In addition, the Florida defendants have repealed their regulation dealing with one substantive change to which the plaintiffs had objected, which required a payment of 50¢ on each drug prescription. No objection was made to the other substantive changes save the limitation on physicians' visits. Therefore, except for the physicians' visits limitation, which we will hereafter consider, the Medicaid reductions enjoined by the district court are either no longer planned, or have been adequately noticed. Florida concedes that ordinarily its full compliance with the judgment below and its repeal of the 50¢ prescription co-payment requirement would render an appeal from that judgment, and the accompanying injunctions, moot.

■ Florida argues, however, that the appeal is not moot for three reasons. First, it contends that the decision below will forever bar it from using the form of notice that the district court held inadequate. That position is simply incorrect. Florida may use any form of notice it desires when announcing future changes in its Medicaid program. Its choice of notice may again be challenged, and the changes may again be enjoined if the notice is determined to be inadequate. Should that happen, Florida can at that time appeal the injunction and gain an appellate determination of the adequacy of the notice. This is not a case that is "capable of repetition, yet evading review." *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973). Florida made its own decision to issue a satisfactory notice after the proceedings below. It could have waited until this court had determined the merits of the appeal before issuing such a notice, and thereby obtained review of the lower court's decision. Its very compliance with the order renders the appeal moot.

■ Florida also argues that a favorable appellate determination on the question of adequacy of the notice will allow it to recoup Medicaid payments it would not have made but for the injunction. Florida provides us with no authority for this proposition. We have been unable to find support for it. The district judge merely prevented Florida from changing its regulations; he did not order any Medicaid payments other than those authorized by existing regulations. The district court's action in enjoining the reduction of Medicaid benefits does not entitle Florida to recover payments lawfully made to Medicaid recipients even if the district judge made a mistake in enjoining the change in law.[3]

Finally, Florida contends that plaintiffs' request for attorney's fees prevents the appeal from being moot. We have recently determined that a claim for attorney's fees under 42 U.S.C. § 1988 does not salvage an

should be made to your case worker, or to Ms. Betty Lovett, Supervisor, Hearings Section, Post Office Box 2050, Jacksonville, Florida 32231.

Federal Regulations provide that if a hearing request is made within the timely notice period benefits shall not be reduced until a decision is rendered, at or after a hearing, that the sole issue is one of state or federal law or policy, or change in state or federal law and not one of incorrect grant computation.

3. Even if Florida could and would have asserted a legal claim against the Medicaid recipients for monies paid out because of the injunction, it is likely from the very nature of qualification for Medicaid benefits that most of the recipients would be unable to repay the state. The federal regulations prohibit the state from reducing any other welfare payments to the Medicaid beneficiaries as a means of recovering incorrect Medicaid payments. *See* 45 C.F.R. § 249.70 (1978).

otherwise moot case. *Doe v. Marshall,* 622 F.2d 118, 119 (5th Cir. 1980). The district court may still determine whether the plaintiffs were the prevailing party and award attorney's fees without regard to whether or not its issuance of the injunctions was ultimately correct in our eyes.

Because Florida has issued a satisfactory notice, our decision on the questions presented by the appeal from the district judge's determination of the adequacy of the notices cannot affect the rights of these litigants. The case is, therefore, moot.

## II. Limitation on Payment for Physicians' Visits—No. 79–2244

The Medicaid program is administered by the states but funded principally by federal grants. Because of the federal participation, the federal statute, 42 U.S.C. § 1396 *et seq.,* supplemented by HEW regulations, 42 C.F.R. § 440 prescribes substantive requirements governing the scope of each state's program.

A portion of the plaintiffs' complaint alleged that Florida's plan to reduce Medicaid expenses by paying for a maximum of three physicians' visits per month, except for emergencies, violated federal regulations and the equal protection clause of the fourteenth amendment. The district judge agreed that the limit on physicians' visits conflicted with federal regulations and entered summary judgment in plaintiffs' favor, permanently enjoining implementation of that reduction in Medicaid benefits. Florida still seeks to implement its proposed three-physician-visit-per-month limitation and contests both the jurisdiction of the district court and its judgment on the merits.

### A. Jurisdiction

While the plaintiffs predicate their cause of action on 42 U.S.C. § 1983, that statute is only remedial; it recognizes a cause of action but it does not of itself bestow jurisdiction of the action on federal courts. Recognizing this, plaintiffs assert jurisdiction under 28 U.S.C. § 1343(3), the text of which is set forth in the footnote.[4]

In *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court held that § 1343(3) jurisdiction does not extend to claims "that a state welfare regulation is invalid because it conflicts with the Social Security Act." In order to obtain federal jurisdiction under § 1343(3), the complaint must state a claim arising under the federal constitution, one that is not merely superficial or frivolous, but is substantial. *See Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Silva v. Vowell,* 621 F.2d 640, 645 (5th Cir. 1980).

The complaint charges that the limitation on physician visits fails to provide the plaintiffs equal protection. The constitutional issue does not appear to be of serious moment,[5] but for jurisdictional purposes the question is not whether the claims are without merit[6] but whether "prior decisions

---

4. § 1343. Civil rights and elective franchise
 (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

 . . . . .

 (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .

 Although plaintiffs assert jurisdiction under 28 U.S.C. § 1331, there is nothing in their complaint or in the record on appeal that indicates that the requisite $10,000 amount is in controversy. In their brief on appeal, plaintiffs do not urge that the district court had § 1331 jurisdiction, but instead pin their jurisdictional hopes on § 1343.

5. Social welfare regulations of the sort here at issue are rarely deemed violative of equal protection, and then only when they have no conceivable rational purpose. *See Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The desire to preserve state resources may be a sufficient state purpose.

6. Various phrases have been used to differentiate constitutionally insubstantial claims from claims that merely lack merit: "essentially fictitious," "wholly insubstantial," "obviously without merit." We feel no need to develop our own lexicon or distill some controlling lan-

**650**

inescapably render the claims frivolous." *Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974), *quoting Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 858–59, 35 L.Ed.2d 36 (1973). *See Bussey v. Harris*, 611 F.2d 1001, 1006 (5th Cir. 1980) (no substantial constitutional issue when analogous claims have been rejected by Supreme Court and this circuit); *Atwell v. Nichols*, 608 F.2d 228, 231 (5th Cir. 1979) (mere assertion of equal protection claim does not give court jurisdiction). .

 Defendants urge that equal protection requires only minimal scrutiny of the state welfare regulations and that the equal protection claim is, therefore, patently meritless. It is correct that, when state welfare statutes are challenged under the equal protection clause, they are subject to examination only for some rational relationship to a proper state end, an examination minimally exacting. However, that does not automatically render such challenges frivolous. State welfare regulations must have a rational basis for the distinctions they draw. We cannot say that the three-physician-visit limitation is "so patently rational as to require no meaningful consideration." *Hagans*, 415 U.S. at 541, 94 S.Ct. at 1381, 39 L.Ed.2d at 590.[7] No Supreme

Court decision has been cited to us specifically dealing with a regulation similar to the one before us. "Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939, 943 (1946). .

Because the equal protection argument could not be rejected out of hand, the court had jurisdiction and, in accordance with established precedent, proceeded properly to consider the regulatory claims as pendent to the constitutional claim. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).[8]

### B. The Merits

The district court found that the limitation of outpatient benefits to payment for three visits to a doctor in any calendar month conflicted with the requirements imposed by the federal statute and regulations for each state plan. Federal financial assistance is provided to states whose plans satisfy federal requirements in the provision of medical services. The statute requires an approved plan to include funding for physicians' services. 42 U.S.C.

guage from the Supreme Court's comments. It is enough to note that a simple conviction that a claim must fail does not divest the district court of jurisdiction. *See generally Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

7. Florida argues that their goal of saving money is sufficient to uphold the regulation. However, it is not obvious, without some analysis, that the plan will actually reduce state expenditures. Florida's decision not to fund all medically necessary physicians' visits may have the undesired effect of preventing adequate treatment of illnesses until they create an emergency situation. Treatment may then be lengthier and costlier than it would have had it been provided earlier.

8. When federal courts have jurisdiction over a claim, they may, in their discretion, hear other claims arising out of the same "nucleus of operative fact" even though they would not ordinarily have jurisdiction over those claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

*See also Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). The policy favoring pendent jurisdiction is particularly strong when, as here, the pendent claim is "one of federal policy." *Id.* at 404, 90 S.Ct. at 1213. The plaintiffs challenge a group of cutbacks in Florida Medicaid benefits that were adopted simultaneously by Florida authorities. The original notice of the cutbacks was contained in a single announcement and the justification for each cutback was the same—lack of funds to continue the benefits at prevailing levels. Although the plaintiffs' attacks on the proposed cutbacks ranged broadly and raised a number of federal constitutional, statutory and regulatory issues, they were prompted by a single action of the state government and were each related to that action in such a manner that one "would ordinarily be expected to try them all in one judicial proceeding. . . ." *United Mine Workers*, 383 U.S. at 725, 86 S.Ct. at 1138. The district court properly exercised its discretion in adjudicating the plaintiffs' statutory claims as pendent to the claim of an equal protection violation.

§ 1396a(a)(13)(B). The applicable regulation, which is set out in the margin, requires each service provided to be "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b).[9]

Whether Florida may limit the number of paid physicians' visits to three per calendar month depends on whether three visits are sufficient "to reasonably achieve" the purpose of going to the doctor's office. The data submitted to the trial court indicates that most Medicaid recipients do not require more than three visits in any calendar month.[10] However, a few, including some of the plaintiff-representatives, do. The answer to the question posed turns on whether the state may place limits on the amount of physicians' services available to a recipient, even though those limits may result in a denial of some medically necessary treatment, if most recipients do not need treatment beyond that provided.[11] The plaintiffs contend that the sufficiency of the service provided must be determined with regard to each individual who receives medical services, and that, if only a handful out of thousands needs to see a doctor more than three times a month, the limitation defeats the regulatory requirement. The logic of this argument would preclude any limitation on any medically necessary service. It would require the state to pay for thirty visits per month if any Medicaid recipient needed such services or hospital stays of indefinite duration.

The frequency of a practice does not determine its validity. It is possible for many to commit the same mistake. However, Florida's limitation is not unprecedented: at least seventeen states limit physicians' services in a similar fashion, and HEW has apparently approved the practice. *See* HEW, Data on the Medicaid Program: Eligibility/Services/Expenditures—Fiscal Years 1966–1978.

Several courts of appeal have considered the validity of state plans that provide certain services only for certain illnesses. In *White v. Beal*, 555 F.2d 1146 (3d Cir. 1977), the Third Circuit concluded that Pennsylvania's decision to provide eyeglasses for those suffering from eye disease, but not for those with non-pathological eye trouble, violated the regulations both because it discriminated on the basis of a medical disorder and because it was "based on a factor not reasonably related to . . . medical need." *Id.* at 1151–52. The First Circuit followed the Third in *Preterm, Inc. v. Dukakis*, 591 F.2d 121 (1st Cir. 1979) in analyzing Massachusetts' decision to fund only abortions necessary to save the life of the mother. Although it ultimately upheld the

9. (a) The plan must specify the amount and duration of each service that it provides.
(b) Each service must be sufficient in amount, duration, and scope to *reasonably* achieve its purpose.
(c)(1) The medicaid agency may not deny or reduce the amount, duration, or scope of a required service under § 440.210 [for the categorically needy] and § 440.220 [for the medically needy] to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.
(2) The agency may place appropriate limits on a service based on medical necessity or on utilization control procedures.
42 C.F.R. § 440.230 (emphasis added).

10. In 1976, persons eligible for Medicaid required, on the average, 5.6 physicians' visits a year. In Florida, only 3.9% of the second quarter 1977 Medicaid population required more than three physicians' visits in any month of that quarter. Only .5% required in excess of three visits in more than one month. On the basis of these statistics, meager as they are,

Florida contends that three physicians' visits per month is sufficient "to reasonably achieve" the purpose of the program.

11. The state may place appropriate limits on a service based on medical necessity. The state does not, however, contend that the three-visit limit is based on the lack of medical necessity of treatment for any individual. Indeed it could not. The plaintiffs include several persons with a documented need for more than three visits per month. For example, one of the plaintiffs suffers from several ailments, including cirrhosis of the liver, tuberculosis, and chronic anemia. His physician concluded that proper treatment would not be possible within the three-visit-per-month limitation. Several doctors testified that a variety of illnesses could not be adequately treated with such a limit. These illnesses included asthma, urinary tract infections, pneumonia, and acute tonsillitis.

requirement on grounds recently approved by the Supreme Court, see *Harris v. McRae*, —— U.S. ——, 100 S.Ct. 2671, 65 L.Ed.2d —— (1980), it concluded that basing the provision of abortion services on a distinction between life and death situations made their availability turn "on medical condition" rather than "on degree of need." *Id.* at 126. *See also Hodgson v. Bd. of County Com'rs, County of Hennepin*, 614 F.2d 601, 608 (8th Cir. 1980).

These decisions do not resolve our problem. Considering medical treatment generally provided through a Medicaid program, they prohibit its denial to individuals solely on the basis of the "diagnosis, type of illness, or condition" those individuals suffered from if the denial is unrelated to medical necessity. The limitation proposed by Florida is not based "solely" upon the "diagnosis, type of illness, or condition" of the recipient. Medicaid funding for physicians' visits is limited to three per month for all persons who need a physician's services except in emergencies. The district judge concluded that the exception for emergencies was subject to the same infirmities as the limitation on cure for abortion discussed in *Preterm* : it discriminates based on condition. However, Florida's decision to pay for no more than three physicians' visits per month does not discriminate on the basis of "condition" between persons who need three or fewer visits and those who need four or more. Neither does its decision to pay for emergency visits beyond the three-visit limitation discriminate against those with less severe "conditions." It simply reflects a judgment by the state that those persons who need emergency care have a higher degree of medical necessity than those who do not. That conclusion is compassionate as well as rational. The provision of emergency services *beyond* the three-visit-per-month limit is patently based on a medical necessity standard, the existence of an exigent need.

The limitation here is completely unlike state limitations on treatment for abortions to life or death situations. Such limitations single out pregnancy and establish a unique standard governing the provision of neces-

sary medical services for that condition. Here, no particular medical condition is singled out for unique treatment or given care only in restricted situations. All medical conditions are treated equally. Those conditions that result in emergency medical situations, where care is most crucial, may receive exceptional treatment, but the conditions entitled to such treatment are described only in terms of medical necessity, not in terms of the "diagnosis, type of illness or condition."

▮ The rationale adopted by the courts that have considered the meaning of the applicable regulations permits the state to place at least one type of limitation on its provision of required services: it may limit those services in a manner based upon a judgment of degree of medical necessity so long as it does not discriminate on the basis of the kind of medical condition that occasions the need. The proposed limitation in this case is not the type that courts of appeals have rejected in the past. It is based on a generally applicable standard of what is deemed reasonable adequacy.

When we consider the plight of the particular individual, we recognize that those patients who require more than three physicians' visits a month are not less in need of a fourth visit for treatment than those who visit the doctor less frequently. Considering the human need, the court below provided a plausible and sympathetic answer: Florida cannot impose limitations on its provision of Medicaid services if those limitations will deny "needed doctor care for those who are unable to pay for it."

The district court's reading of the regulations is persuasive but it reads into the regulations a limitation that appears to us to render meaningless the power given the states to define the scope of a service so long as what is provided is sufficient to reasonably achieve its purpose. Moreover, while HEW has not formally explained the regulation, its publications indicate that HEW interprets the regulation to permit such limitations and apparently views them as authorized by § 440.230(b). *See HEW*

Data on the Medicaid Program: Eligibility/Services/Expenditures—Fiscal Years 1966–1978 pp. 1, 4. HEW has approved state plans that include precisely the type of limitation on physicians' visits per month that Florida seeks to adopt. *Id.* The consistent pattern of approval of similar limitations satisfies us that HEW views a limitation on the "amount, scope or duration" of a required service as "reasonable" if the coverage provided is adequate to serve the medical needs of most of the individuals eligible for Medicaid assistance. *Cf. Virginia Hospital Ass'n v. Kenley*, 427 F.Supp. 781, 786 (E.D.Va.1977) (HEW permits states to limit number of days of hospital care per year they will subsidize on basis of average amount of hospital care a Medicaid recipient requires). The plaintiffs do not contend that this standard is not met.

When the meaning of an agency's regulation is not clear, deference should be given to the interpretation adopted by the agency that promulgated the regulation and administers the statute. See *New York State Department of Social Services v. Dubino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973); *Red Lion Broadcasting v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

The regulatory criterion is not whether the treatment suffices for a cure in all cases, but whether the plan is sufficient for reasonable accomplishment of its purpose. Florida's regulation is not inconsistent with Title XIX's broad purpose of servicing the indigent. Nor is it inconsistent with the purpose of the provision of physicians' services to the Medicaid population as a whole. *See Virginia Hospital Ass'n v. Kenley*, 427 F.Supp. 781, 785 (E.D.Va.1977).

In our opinion, the district court erred in ignoring the interpretation given to the regulation by HEW and was mistaken in its application of precedent. We reverse its judgment that the regulations are violated by the three-physician-visit-per-month limitation and remand for consideration of the constitutional claim.

The appeal in No. 78–2203 is DISMISSED. The district court's judgment in No. 79–2244 is REVERSED and the case is REMANDED for such further proceedings as may be necessary consistent with this opinion.