OPINION
Aaron Rose, by and through his parents and next friends, Eugene and Cynthia A. Rose, appeals a Warren County Court of Common Pleas decision affirming a reduction of benefits available to Aaron under the Medically Fragile Waiver Program ("Waiver Program").
Aaron suffers from numerous and severe medical problems including multiple congenital anomalies, severe hypertension and chronic lung disease. In 1991, Aaron was enrolled in the Waiver Program. The Waiver Program is administered by the Ohio Department of Human Services ("ODHS") and utilizes Medicaid funds to provide home-based health services to individuals who, but for the Waiver Program, would require institutional care. When Aaron enrolled in the Waiver Program, the ODHS approved seventeen hours of private duty nursing care benefits ("benefits") per day for Aaron's home based health care.
In March 1992, Aaron's eligibility in the Waiver Program was reassessed and the ODHS proposed to reduce his benefits from seventeen hours to eight hours per day. The basis for the reduction was "medical necessity." The proposed reduction was affirmed on administrative appeal by a state hearing officer and upon further administrative appeal by the ODHS. However, on appeal pursuant to R.C. 119.12 and R.C. 5101.35(E), the Warren County Court of Common Pleas reversed the administrative decision and held that a reduction was not warranted based upon "medical necessity." The court of common pleas issued its decision on August 27, 1993.
On September 9, 1993, the ODHS sent notice of a proposed reduction in Aaron's benefits based upon a newly-implemented "cost cap." However, the proposed reduction was stayed until a federal class action challenging the cost cap was settled on August 2, 1995.[1] On December 4, 1995, a hearing was finally held before a state hearing officer on the proposed reduction. On March 28, 1996, the hearing officer issued a decision that affirmed the proposed reduction of Aaron's benefits, based upon the cost cap, from seventeen hours to twelve hours per day. The reduction was affirmed upon further administrative appeal by the ODHS. On appeal, pursuant to R.C. 5101.35(E) and R.C. 119.12, the Warren County Court of Common Pleas affirmed the administrative decision to reduce Aaron's benefits based upon the cost cap. The Roses timely appealed to this court and raise three assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN HOLDING THAT THE DECISION OF APPELLEE WAS IN ACCORDANCE WITH LAW.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN HOLDING THAT THE DECISION OF APPELLEE IS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN FAILING TO FILE FINDINGS OF FACT AND CONCLUSIONS OF LAW.
In their first assignment of error, the Roses assert that the common pleas court erred by finding that the reduction of Aaron's benefits was in accordance with law. Specifically, the Roses argue that the reduction of Aaron's benefits, based upon the cost cap, was barred by res judicata, violated federal law, violated due process, and denied Aaron equal protection.
A common pleas court may affirm an administrative agency's determination if it is "supported by reliable, probative, and substantial evidence and is in accordance with law." R.C.119.12. This court's review is more limited; we only determine whether the court of common pleas abused its discretion in finding that the decision of the administrative agency was supported by reliable, probative and substantial evidence. Pons v. Ohio State Medical Bd. (1993), 66 Ohio St.3d 619, 621; Moran v. Ohio Dept. of Commerce (1996), 109 Ohio App.3d 494, 497. However, as to questions of law, this court reviews the common pleas decision de novo. Moran at 497.
"Medicaid is a cooperative federal-state program through which the federal government offers financial assistance to participating states that provide medical care to needy individuals." Wood v. Tompkins (C.A. 6, 1994), 33 F.3d 600, 602. Ohio has elected to participate in the Medicaid program and receives financial assistance, Medicaid funds, from the federal government. In order to receive Medicaid funds, Ohio must comply with the requirements of the Medicaid Act and regulations promulgated by the Secretary of Health and Human Services ("HHS"). Id.
States may apply to the Secretary of HHS for a waiver of various Medicaid requirements so that Medicaid funds may be used to provide home care for Medicaid recipients who would otherwise require institutional care. See Section 1396n(c), Title 42, U.S. Code. Since home care is often less expensive than institutional care, these waivers are intended to save money for both the state and the federal governments. Wood at 602.
In 1989, Ohio applied for and received approval from the Secretary of HHS to provide home care under the Waiver Program. After approving the Waiver Program, the Secretary of HHS and the Health Care Financing Administration ("HCFA") are required to monitor the program in order to ensure that all Medicaid requirements are being met and terminate the Waiver Program if it fails to comply. See Section 1396n(f)(1), Title 42, U.S. Code; Section 441.302, Title 42, C.F.R.
Effective July 31, 1992, Ohio's Waiver Program includes a monthly cost cap. Ohio Adm. Code 5101:3-39-02(B). In order for an individual to be eligible for the Waiver Program, the monthly cost of the benefits provided under the Waiver Program cannot exceed the cost cap. Id. The monthly cost cap is the estimated cost of institutional care for recipients who receive benefits under the Waiver Program as determined by using an equation set forth in Ohio Adm. Code 5101:3-39-02(B).
The Roses assert that res judicata barred the ODHS from reducing Aaron's benefits based upon the cost cap. "Res judicata, whether claim preclusion (estoppel by judgment) or issue preclusion (collateral estoppel), applies to administrative proceedings that are of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding." Evangelinos v. Ohio Div. of Reclamation (1997),117 Ohio App.3d 720, 724, citing Grava v. Parkman Twp. (1995),73 Ohio St.3d 379. Although res judicata applies to administrative proceedings, it should be applied with flexibility. Id., citing Jacobs v. Teledyne, Inc. (1988), 39 Ohio St.3d 168.
The Roses argue that the ODHS could have raised the cost cap issue when they previously attempted to reduce Aaron's benefits based upon "medical necessity." However, the medical necessity proceedings were commenced in March 1992 when the ODHS sent notice of the proposed reduction of Aaron's benefits. The cost cap did not go into effect until July 31, 1992. Thus, the prior proceedings were commenced before the cost cap was enacted. Moreover, the cost cap was not actually enforced by the ODHS until the federal class action was settled in August 1995. Since the court of common pleas issued a final decision in the medical necessity proceedings on August 27, 1993, the prior proceedings had already been concluded for two years before actual enforcement of the cost cap commenced. Therefore, we find that the parties did not have an opportunity to litigate the cost cap issue during the medical necessity proceedings. Accordingly, the subsequent proceeding to reduce Aaron's benefits based upon the cost cap was not barred by res judicata.
The Roses also assert that the cost cap fails to comply with federal law. In order to provide the Waiver Program, Ohio is required to make various assurances that are satisfactory to the Secretary of HHS, Section 1396n(c)(2), Title 42, U.S. Code, and the HCFA, Section 441.302, Title 42, C.F.R. The Roses argue that the cost cap fails to satisfy assurances that must be made concerning average expenditures under the Waiver Program and assurances that must be made concerning the health and welfare of participants in the Waiver Program.[2]
Assurances that must be made to the Secretary of HHS and the HCFA concerning the average expenditures under the Waiver Program do not give rise to enforceable rights for participants in the Waiver Program. Wood, 33 F.3d at 611. These assurances were not intended to benefit participants in the Waiver Program. Id. "Rather, they were intended to save the government money by limiting the amount of Medicaid funds that a state may spend on home care." Id. Therefore, since the Secretary of HHS and the HCFA have found that Ohio has made satisfactory assurances concerning the average expenditures under the Waiver Program, the Roses' argument that the cost cap does not satisfy Section 1396n(c)(2)(D), Title 42, U.S. Code and Section 441.302(e), Title 42, C.F.R. lacks merit.
In contrast to the assurances concerning the average expenditures, the assurances concerning the health and welfare of recipients were intended to benefit participants in the Waiver Program. Woods at 611. Therefore, Section 1396n(c)(2)(A), Title 42, U.S. Code and Section 441.302(a), Title 42, C.F.R. give rise to enforceable rights for participants in the Waiver Program. Id. However, "these provisions apply only to medical assistance which Ohio chooses to provide under its state plan and do not mandate the extent of coverage the state must include in its plan." Ash v. Ohio Dept. of Human Services (Feb. 13, 1998), Washington App. No. 97CA3, unreported, citing, Curtis v. Taylor (1980),625 F.2d 645, modified on other grounds, 648 F.2d 946.
Pursuant to Ohio Adm. Code 5101:3-39-02(D), an individual is not eligible to enroll in the Waiver Program unless "health related needs can be safely met in a home setting as determined by BCS [Bureau of Community Services]." In addition, since eligibility for the Waiver Program is reassessed annually pursuant to Ohio Adm. Code 5101:3-39-03(E), individuals already enrolled in the Waiver Program cannot continue unless "health related needs can be safely met in a home setting." Ohio Adm. Code 5101:3-39-02(D). Ohio Adm. Code 5101:3-39-02(D) contains specific factors that the BCS may consider in determining whether home care can be safely provided.[3] Finally, the Waiver Program contains the necessary safeguards that are specifically set forth in Section 441.302(a), Title 42, C.F.R. as mandatory requirements. See Ohio Adm. Code 5101:3-39-05; Ohio Adm. Code 5101:3-39-051. Based upon the foregoing, we find that the Waiver Program includes necessary safeguards to protect the health and welfare of participants in the Waiver Program. Accordingly, we conclude that the Roses' assertion that the Waiver Program fails to comply with federal law lacks merit.
The Roses also assert that the notice of the proposed reduction in Aaron's benefits and the hearing before the state officer were not sufficient to satisfy Aaron's right to procedural due process. Procedural due process requires a government agency to provide an individual with reasonable notice and a meaningful opportunity to be heard before a final administrative adjudication. Crist v. Battle Run Fire Dist. (1996), 115 Ohio App.3d 191,197, citing Ohio Assn. of Pub. School Emp., AFSCME, AFL-CIO v. Lakewood City School Dist. Bd. of Edn. (1994), 68 Ohio St.3d 175,176. "`Fundamental due process requires `notice' sufficient to apprise the defendant of the action's pendency so that objections by the defendant may be presented.'" Crist at 197, quoting Sampson v. Hooper Holmes, Inc. (1993), 91 Ohio App.3d 538,540.
In the present case, the ODHS sent notice of a proposed reduction of Aaron's benefits on September 9, 1993. The notice stated that Aaron's benefits were being reduced because they exceeded the waiver cost cap in Ohio Adm. Code 5101:3-39. The notice also explained that Aaron had a right to a state hearing in order to challenge the proposed reduction and contained the name and telephone number of a case worker at the ODHS that should be contacted if there were any questions about the proposed reduction. In addition, the ODHS sent a letter to the Roses on September 8, 1995 informing them that Aaron's benefits would be reduced to $9,000 in accordance with the cost cap. Based upon the notice and letter, we find that Aaron received sufficient notice prior to the state hearing on December 4, 1995 to satisfy his right to procedural due process.
At the state hearing, Aaron was represented by an attorney who was provided with the opportunity to submit evidence, call witnesses, cross-examine witnesses presented by the ODHS, and make closing arguments. Further, the hearing complied with all of the procedural requirements set forth in Ohio Adm. Code5101:6-6-02. Accordingly, we also find that Aaron was provided with a meaningful opportunity to be heard and conclude that Aaron was not denied due process. See Shumaker v. Ohio Dept. of Human Services (1996), 117 Ohio App.3d 730, 735.
The Roses also assert that the cost cap deprives Aaron of benefits under the Waiver Program in violation of the equal protection clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Ohio Constitution. The standard to determine whether a statute violates equal protection is "essentially the same under state and federal law." State v. Thompkins (1996), 75 Ohio St.3d 558,561, quoting Fabrey v. McDonald Village Police Dept. (1994),70 Ohio St.3d 351, 353. Strict scrutiny of a legislative classification is only required where the legislative classification impermissibly interferes with the exercise of a fundamental right or operates to the disadvantage of a suspect class. Thompkins at 561; Massachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307, 312, 96 S.Ct. 2562. Therefore, where a fundamental right or suspect classification is not involved, legislative classifications are constitutional if they are rationally related to a legitimate government interest. Thompkins at 561; Fabrey at 353.
The Roses argue that recipients of services under the Waiver Program whose costs of care do not rise above the cost cap are treated differently as a class than Aaron and other recipients whose costs exceed the cost cap. The Roses further argue that this classification should be subject to strict scrutiny because Aaron is a member of a suspect class and the classification interferes with a fundamental right. In the alternative, the Roses argue that the cost cap is not rationally related to any legitimate government interest.
The United States Supreme Court has only found a "suspect class" where legislation creates classifications based upon race, national origin and alienage. City of Cleburne, Tex. v. Cleburne Living Center (1985), 105 S.Ct. 3249, 3254, 473 U.S. 432, 440. Moreover, Aaron does not have a fundamental right to receive benefits under the Waiver Program. See Dandridge v. Williams (1970), 397 U.S. 471, 485, 90 S.Ct. 1153, 1162. Therefore, the rational basis test is the proper standard to determine whether the cost cap violates equal protection.
In order to receive approval from the Secretary of HHS and HCFA, Ohio must demonstrate that the Waiver Program is cost effective. See Section 1396n(c)(2)(D), Title 42, U.S. Code; Section 441.302(e), Title 42, C.F.R. Specifically, Ohio must make assurances that the average expenditure for participants in the Waiver Program does not exceed the average expenditure that is estimated such individuals would incur for institutional care. Id. The cost cap is based on the estimated cost of institutional care for participants in the Waiver Program. Thus, the cost cap controls expenditures spent on participants in the Waiver Program so that those expenditures do not exceed the amount that would have been spent for institutional care. Accordingly, since the cost cap is rationally related to Ohio's legitimate interest in preserving the cost effectiveness of the Waiver Program, the cost cap does not violate the equal protection guarantees of the Ohio or United States Constitutions.
In sum, we conclude that the court of common pleas did not err by finding that the reduction of Aaron's benefits based upon the cost cap was in accordance with law. Accordingly, the Rose's first assignment of error is overruled.
In their second assignment of error, the Roses assert that the court of common pleas erred by finding that the decision to reduce Aaron's benefits was supported by reliable, probative, and substantial evidence. Specifically, the Roses argue that the ODHS failed to submit sufficient documentation and evidence as to how the cost cap figures were calculated. In addition, the Roses argue that the decision to reduce Aaron's benefits was made without considering Aaron's safety and welfare.
At the state hearing, a representative from the ODHS testified that the current cost cap is approximately $9,000 per month. The representative testified that the cost cap is the estimated cost of institutional care for participants in the Waiver Program as determined by using the equation set forth in Ohio Adm. Code5101:3-39-02(B).[4] The representative explained that in determining the values assigned to B and B', ODHS identified a target group of Medicaid recipients who receive institutional care and would have met the basic eligibility requirements for the Waiver Program. The representative testified that ODHS measured the amount that Medicaid paid annually for the treatment of the individuals in the target group and divided this amount by eight, to reflect an eightmonth length of stay, and then multiplied by 1.125 to reflect inflation. The representative testified and produced evidence at the state hearing which showed that the values assigned to B, $59,592, and B', $2,985, were approved by the HCFA based upon documentation submitted by the ODHS.
At the state hearing, a representative from ODHS acknowledged that the proposal to reduce benefits was partly based upon the cost cap requirement. However, the representative also testified that the proposal was based upon nursing assessments conducted in May 1993 and May 1995 which indicated that Aaron could be safely cared for with less than seventeen hours of private nursing care per day. The representative testified that Aaron's primary caregivers could supplement the hours of private nursing care that were provided under the Waiver Program to meet Aaron's health and safety needs. In addition, the representative testified that funds to pay for additional nursing care may be available to the Roses from other sources. The ODHS also presented evidence of a proposed meeting with the Roses to develop a plan for utilization of other community resources to supplement the benefits provided under the Waiver Program.
Based upon the foregoing testimony and evidence, the court of common pleas did not abuse its discretion by finding that the ODHS' decision was supported by reliable, probative, and substantial evidence. The Roses argue that the evidence was insufficient because the documentation that was used to support the values assigned to B and B' was not produced. However, the ODHS submitted the supporting documentation to the HCFA, and the HCFA approved the values assigned to B and B'. See Section 441.303(f), Title 42, C.F.R. Further, the Roses' evidentiary arguments concerning the values assigned to B and B' are unpersuasive. State hearings are to be conducted informally, and "formal rules of evidence shall not apply." Ohio Adm. Code5101:6-6-02(B)(1). Moreover, although the record contains conflicting evidence, ODHS presented sufficient evidence that Aaron's needs could be safely met in his home despite the reduction of his benefits under the Waiver Program. Accordingly, the decision to reduce Aaron's benefits was supported by reliable, probative, and substantial evidence, and the Roses' second assignment of error is overruled.
In their third assignment of error, the Roses assert that the common pleas court erred by failing to issue separate findings of fact and conclusions of law in accordance with Civ.R. 52. Civ.R. 52 provides upon proper request of a party, a court shall issue findings of fact and conclusions of law. However, Civ.R. 52 is only applicable when "questions of fact are tried by a court without a jury." Therefore, when a common pleas court reviews an administrative decision, pursuant to R.C. 119.12, without hearing any additional evidence, the court is not required to make separate findings of fact and conclusions of law. General Motors Corp. v. O'Brien Chevrolet, Inc. (1997), 118 Ohio App.3d 470,479. "Unless the court is making factual determinations on the basis of additional evidence not before the administrative agency, Civ.R. 52 has no application to such review proceedings." Id.
In the present case, the record does not reveal that any additional evidence was considered by the common pleas court in reviewing the administrative decision of ODHS. Accordingly, the common pleas court did not err by refusing to issue findings of fact and conclusions of law. The Roses' third assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] In Wood v. Tompkins (C.A. 6, 1994), 33 F.3d 600, the Sixth Circuit affirmed in part, reversed in part, and remanded a decision of the federal district court which denied the ODHS' motion to dismiss the federal class action. The record contains a consent decree which indicates that the parties settled the class action upon remand on August 2, 1995.
[2] Section 1396n(c)(2), Title 42, U.S. Code provides:
 A waiver shall not be granted under this subsection unless the state provides assurances satisfactory to the Secretary [of HHS] that —
 (A) necessary safeguards (including adequate standards for provider participation) have been taken to protect the health and welfare of individuals provided services under the waiver and to assure financial accountability for funds expended with respect to such services;
* * *
 (D) under such waiver the average per capita expenditure estimated by the State in any fiscal year for medical assistance provided with respect to such individuals does not exceed 100 percent of the average per capita expenditure that the State reasonably estimates would have been made in that fiscal year for expenditures under the State plan for such individuals if the waiver had not been granted[.]
Section 441.302, Title 42, C.F.R. provides:
 Unless the Medicaid agency provides the following satisfactory assurances to HCFA, HCFA will not grant a waiver under this subpart and may terminate a waiver already granted:
 (a) Health and Welfare — Assurance that necessary safeguards have been taken to protect the health and welfare of the recipients of the services. Those safeguards must include —
 (1) Adequate standards for all types of providers that provide services under the waiver;
 (2) Assurance that the standards of any State licensure or certification requirements are met for services or for individuals furnishing services that are provided under the waiver; and
 (3) Assurance that all facilities covered by section 1616(e) of the Act, in which home and community-based services will be provided, are in compliance with applicable State standards that meet the requirements of 45 CFR Part 1397 for board and care facilities.
 (e) Average per capita expenditures — Assurance that the average per capita fiscal year expenditures under the waiver will not exceed 100 percent of the average per capita expenditures that would have been made in the fiscal year for the level of care provided in a hospital, NF, or ICF/MR under the State plan had the waiver not been granted.
 (1) These expenditures must be reasonably estimated and documented by the agency.
 (2) The estimate must be on an annual basis and must cover each year of the waiver period.
[3] Ohio Adm. Code 5101:3-39-02 provides:
 (D) Health related needs can be safely met in a home setting as determined by BCS. Information which may be used in the determination includes, but is not limited to:
 (1) The assessment of the client and the client's home performed by a BCS-employed registered nurse;
(2) The annual reassessment performed by a BCS employee;
 (3) A demonstration of required skills by the primary caregiver, if appropriate;
(4) Case management reports;
(5) An independent physician evaluation; and/or
 (6) Any other information supplied by members of the interdisciplinary team involved with the client.
[4] Ohio Adm. Code 5101:3-39-02(B) provides in relevant part:
 The monthly cost cap equals the sum of B (annual per capita cost for institutional care) and B' (annual per capita cost for acute care services) for those who meet the HCBS eligibility criteria identified in this rule but who are not enrolled in the HCBS waiver program, divided by an average length of stay of eight months. The quotient is multiplied by an inflation factor of 1.125.
Cost cap = [(B + B')/8 months] x 1.125.
 Cost caps are determined at the beginning of each waiver year and use the B and B' values on the most recent HCFA 372 "Annual Report on Home and Community-Based Services Waivers," or the waiver proposal itself if no HCFA 372 is available.