GAIL DOUGHERTY, ON BEHALF OF MICHAEL DOUGHERTY, HER SON, APPELLANT, v. DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES AND MIDDLESEX COUNTY MEDICAL ASSISTANCE UNIT, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 9, 1981—Decided June 30, 1981.

Before Judges FRITZ, POLOW and JOELSON.

*Steven P. Weissman* argued the cause for appellant (Middlesex County Legal Services Corp., attorney; *Steven P. Weissman* and *Mary Joe Belardi* of counsel and on the brief).

*Barbara A. Harned*, Deputy Attorney General, argued the cause for respondent (*James R. Zazzali*, Attorney General of

New Jersey, attorney; *John J. Degnan,* former Attorney General of New Jersey; *Erminie L. Conley,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

JOELSON, J. A. D.

Appellant is the mother of Michael Dougherty, an asthmatic nine-year-old boy who is eligible for medical assistance as a public assistance recipient. She applied to the Division of Medical Assistance and Health Services (Division) for Medicaid payments for a "HEPA Air Cleaner" which was prescribed for Michael by his physician. After her claim was denied by the local medical assistance unit of the Division, she was given a hearing before an administrative law judge who recommended that the determination of the local medical assistance unit be reversed. However, exceptions to that determination were filed and the director of the Division reversed the decision of the administrative law judge and denied the payment. This is an appeal from that denial. We reverse.

Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 *et seq.,* establishes a program commonly known as "Medicaid." It provides a cooperative federal-state program for payment for medical assistance to persons whose income and resources are insufficient to meet the cost of necessary medical services. 42 U.S.C.A. § 1396a(a)(13)(B) requires a state program to provide specified mandatory services to persons who qualify because they receive other types of public assistance. It also establishes optional categories which a state may elect to make available to such persons.

■ We are persuaded that the device or equipment for which payment is hereby sought does not fall within the mandatory features of the federal legislation. The mandatory items to be considered as "medical assistance" are contained in 42 *U.S.C.A.* § 1396d(a)(1) through (5). Of these items, the only one which might arguably be pertinent is so much of 42 *U.S.C.A.*

1396d(a)(4)(B) which provides that the term "medical assistance" includes payment of the cost of "such health care, treatments and other measures to correct or ameliorate defects and chronic conditions . . . as may be provided in regulations of the secretary." However, the Secretary's regulations pursuant thereto provide that except for screening and treatment of defects in vision, hearing and for dental care (42 *C.F.R.* § 441.51), any other service a state may provide is purely discretionary. 42 *C.F.R.* § 441.57.

This brings us to a consideration of whether appellant has a valid claim under the federal statutory provisions concerning the optional category of coverage contained in 42 *U.S.C.A.* 1396d(a)(6) through (16). Although the federal legislation is an almost impenetrable thicket of sections, subsections and sub-subsections, both parties agree that the dichotomy between mandatory and optional categories as set forth above is to be discerned in 42 *U.S.C.A.* 1396a(a)(13)(B), and that the mandatory and optional categories are as above described.

Pursuant to his authority under 42 *U.S.C.A.* 1396a(a)(17) to establish "reasonable standards . . . for determining eligibility for and the extent of medical assistance . . .," the director of the Division has promulgated regulations for the program in New Jersey. *N.J.A.C.* 10:49–1.4(10) generally authorizes payment for "Medical supplies and equipment." The definition of medical equipment is contained in *N.J.A.C.* 10:59–1.2, which provides as follows:

"Medical equipment" means an item, article or apparatus which has the following characteristics:

1. Is primarily and customarily used to serve a medical purpose;

2. Is generally not useful to a person in the absence of a disease, illness or injury;

3. Is capable of withstanding repeated use (durable) and is non-expendable (for example, hospital bed, oxygen equipment, wheelchair, walker, suction equipment, and the like).

The director also adopted a regulation under *N.J.A.C.* 10:59–1.6(a) dealing with "non-covered items." *N.J.A.C.* 10:59–1.6(a)(6) specifically excludes:

Environmental control equipment and supplies (for example, air conditioners, humidifiers, dehumidifiers, electrostatic filters and so forth):
1. Exceptions are vaporizers and cool mist humidifiers.

We find the state regulations quoted above to be valid since Title XIX confers broad discretion on the State to adopt standards, requiring only that such standards be reasonable and consistent with the objectives of the act. *Beal v. Doe*, 432 *U.S.* 438, 97 *S.Ct.* 2366, 53 *L.Ed.2d* 464 (1977), reh. den. 434 *U.S.* 880, 98 *S.Ct.* 241, 54 *L.Ed.2d* 163 (1978). Even within the five mandatory categories of services, a state may adopt reasonable standards to determine the extent of medical services that it will provide. *Roe v. Casey*, 464 *F.Supp.* 487, 500 (E.D.Pa.1978), aff'd 623 *F.2d* 829 (3 Cir.1980). A state may impose limitations based upon the degree of medical necessity. *Curtis v. Taylor*, 625 *F.2d* 645 (5 Cir.1980).

Applying these regulations, *N.J.A.C.* 10:59–1.2 and *N.J.A.C.* 10:59–1.6(a)(6), the administrative law judge determined the HEPA air cleaner to be covered medical equipment, finding that it "is customarily used to serve a medical purpose and is generally not medically useful to a person in the absence of an illness." She further found the air cleaner "is equipment in the same class as a vaporizer and, therefore, according to the 'ejusdem generis rule' should also be listed as an exception . . . ." However, the director reversed the decision of the administrative law judge and found the air cleaner to be an electrostatic air filter specifically excluded under *N.J.A.C.* 10:59–1.6(a)(6). Since the record is sketchy at best as to these underlying factual questions, ordinarily we would remand for further testimony and new findings. However, we do not deem it necessary to do so because of our opinion that under the unique circumstances of this case, the regulation may and should be waived in any event.

Michael Dougherty, nine years old, has suffered from bronchial asthma and allergic rhinitis for several years. His condition is severe, and he is subject to acute attacks during which he wheezes, loses his breath and is unable to walk. Before obtaining the air cleaner which is the subject of this controversy, he

has been obliged to undergo emergency hospital treatment approximately twice a month and, in addition, has been hospitalized as a patient twice within a two-year period. These hospitalizations were of a five- or six-day duration. The cost of each hospitalization, paid through Medicaid, was approximately $1,000. Moreover, the cost of each emergency room visit was $40, exclusive of the cost of drugs. As a result of these intermittent attacks, Michael has also lost considerable time from school.

The record indicates that Michael's treating physician unsuccessfully treated the boy with cortisone and desensitization injections. When this course of treatment proved unavailing and not able to stop the periodic hospital visits and treatments, he prescribed the air cleaner. Since having the benefit of this equipment, Michael has not required hospital treatment. This is explained in a letter from his physician, a board-certified allergist, advising that Michael's bronchial asthma and allergic rhinitis are due to inhalation of pollens, dust and molds, and that the air cleaner is "medically necessary" because it cleans the air of particles of these substances. He concludes by stating that "the air cleaner prevents symptoms and contributes to keeping Michael out of the emergency room and hospital."

Since the apparent purpose of the regulations is to foreclose coverage for devices useful for comfort rather than for the treatment of illness, and the mischief intended to be eliminated is the use of public moneys for the acquisition of equipment used for comfort and convenience, we conclude that under the circumstances of this case, if the air cleaner cannot be covered without waiver of the regulations, such waiver is both permissible and justifiable.

We find nothing in the federal legislation or regulations which purports to deprive state agencies of the ordinarily reserved right of reasonable exercise of discretion. In this respect it must be kept in mind that we are not here dealing with an organic change of legislation or waiver of such a nature as must

be authorized by legislation. Rather, we deal with the question of whether the very director to whom has been delegated specific authority to promulgate the regulations can by the same token waive them for special reasons and for good cause. We emphasize that caution is needed in the relaxation of an administrative regulation in order to avoid undesirable favoritism or prejudice or the appearance thereof. Nevertheless, if clear and compelling reasons are present, waiver or relaxation of a regulation should be permissible to avoid a result which obviously does not achieve the purpose of the legislation.

Although the administration of government should be a respected endeavor, in some quarters "bureaucracy" has become a pejorative term, at least in part because of a play-it-safe attitude on the part of some administrators. This attitude nurtures a reluctance to look to the substance of the true purpose underlying formal regulations. As pointed out above, the true purpose of the regulations at issue is to eliminate comfort items and avoid unnecessary expense. Often considerations of economy and compassion compete against one another. Here, however, we have the unusual situation where these two considerations function in tandem. By granting coverage for the $269 equipment, the outlay of far greater sums in mandatory coverage would be spared. The record indicates that the hospital treatment of Michael consisted of placing him in a croup tent, *which contained an air cleaner device.* In addition to the economic consideration, and more importantly, the boy will be spared the suffering of illness and the trauma of hospitalization. Under the circumstances, although we understand the director's reluctance to decline to enforce his own regulations across-the-board, we find this to be a case where he can and should so decline, effectuating the true purpose of the legislation as a whole.

If this legislation specifically gave the director discretion to waive his own regulations, we would find his refusal to do so a mistaken exercise of discretion under the circumstances of this case. While there is no such express statutory grant of discre-

tion, the director must not regard his own regulations as so chiselled in granite as to be immutable. Administrative regulations are not an end unto themselves. *Texter v. Human Services Dep't.*, 178 *N.J.Super.* 104, 108 (App.Div.1981), certif. granted 87 *N.J.* 352 (1981). Push-button government may have the advantage of being precise and predictable, but it may also have the disadvantage of disserving the true legislative intent, while at the same time being unwise and unfeeling. This case presents clear and compelling reasons to mould the regulations in order to produce a sensible and humane result. We will not regard the director's regulations as so sacrosanct as to require him to apply them automatically to reach a result that clearly defeats the broad intent of the legislation and is absurd from the standpoint of economy as well as insensitive from the standpoint of humanity.

Reversed.