PHILADELPHIA WELFARE RIGHTS ORGANIZATION, et al.

v.

Helen O'BANNON, et al.

Civ. A. No. 80–3328.

United States District Court, E. D. Pennsylvania.

June 30, 1981.

Lawrence M. Schall and Richard Gold, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Stanley I. Slipakoff, Deputy Atty. Gen., Dept. of Public Welfare, Philadelphia, Pa., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

In this class action suit the Philadelphia Welfare Rights Organization and several named plaintiffs challenge the elimination from coverage of the adult eyeglass and orthopedic shoe programs under the state regulations implementing the federal Medical Assistance program, 42 U.S.C. § 1396 *et seq.* Plaintiffs seek to permanently enjoin the individual defendants of the Pennsylvania State Department of Public Welfare ("DPW") from terminating these services. Plaintiffs rely on several grounds, including the charge that the termination of benefits violates the recipients' due process rights under the Fourteenth Amendment of the U.S. Constitution and their rights under regulations promulgated by the U.S. Department of Health & Human Services (formerly "The U.S. Department of Health,

Education & Welfare" or "HEW") to implement 42 U.S.C. § 1396 *et seq.* After consideration of the evidence presented at final hearing and the arguments and memoranda submitted on behalf of the parties, I deny the relief requested.[1]

## I. THE FACTS

Pursuant to 42 U.S.C. § 1396 *et seq.* Pennsylvania participates in a federal-state cost sharing program to provide medical assistance to needy families with dependent children and to low-income people who are aged, blind or disabled. On June 28, 1980 defendants published a public notice in the *Pennsylvania Bulletin* providing that effective September 1, 1980 it would terminate, *inter alia,* eyeglasses and orthopedic shoes for individuals over 21 years of age.[2] During the week of July 25, 1980 DPW sent individual notices to recipients that coverage of the eyeglass program would end on September 1, 1980; however, unlike the public notice, which did not include those aged 21, the individual notice stated the program would exclude persons 21 years of age and older. Also, at the end of July 1980 DPW sent individual notices to recipients of the orthopedic shoe program that effective October 1, 1980 the Medical Assistance Program would not pay for shoes for individuals 21 years of age or older. Thereafter, on August 2, 1980 DPW published another public notice which restated its intent to terminate the adult eyeglass program on September 1, 1980, this noticed defined adults as age 21 or over.

In addition to a challenge to subject matter jurisdiction by defendants, the issues presented by this law suit are: (1) whether DPW's notices to individual recipients announcing the programs' terminations were violative of the applicable federal agency regulations in that the notices required that all Medical Assistance recipients must file their appeals by September 30, 1980, (2) whether DPW's public notice of June 28, 1980 was legally sufficient as to the eyeglass program and whether DPW's public notice of August 2, 1980 announcing termination of the eyeglass program on September 1, 1980 violated 42 C.F.R. § 447.-205 in that it followed, rather than preced-

---

1. Also, plaintiffs challenged in this suit the announced intention of the state to terminate several other programs; however, all other programs have been continued and the notice of intention to terminate was voluntarily withdrawn by the State. By consent the adult eyeglass and orthopedic shoe programs have continued pending final adjudication of this civil action. This memorandum of decision incorporates the findings of fact and conclusions of law required by Rule 52 of the Fed.R.Civ.P.

2. The notice announcing termination of the programs reads in relevant part:

DEPARTMENT OF PUBLIC WELFARE
Notice of Proposed Reductions in Coverage by the Medical Assistance Program of Certain Medical Supplies

By this notice, the Department of Public Welfare is advising all interested persons that effective September 1, 1980, it is proposing to discontinue coverage for certain "medical supplies" presently available under the Medical Assistance Program.

The medical supplies which the Department is proposing to exclude from coverage are as follows:

1. Eyeglasses for individuals over 21 years of age. The estimated decrease in annual aggregate expenditures for this service is $1,500,000. This service is being eliminat-

ed due to the lack of funds necessary to support this service.

2. Orthopedic shoes, whether attached or not attached to a leg brace, for individuals over 21 years of age. The estimated decrease in annual aggregate expenditures for this service is $1,100,000.

. . . . .

The Department is eliminating the [orthopedic shoe program] from coverage because of findings by the Auditor General that these particular items have been highly misutilized. Furthermore, through the elimination of these optional services, the Department is attempting to reduce the escalating costs of the Medical Assistance Program.

Interested persons are invited to submit written comments, suggestions, or objections regarding the proposed revisions to the Department of Public Welfare, Health and Welfare Building, Room 510, Harrisburg, Pennsylvania 17120, within 60 days of publication of this notice in the Pennsylvania Bulletin. The public is also invited to review the comments submitted to the Department in Room 510 of the Health and Welfare Building.

Helen B. O'Bannon.
Secretary of Public Welfare
PENNSYLVANIA BULLETIN, VOL. 10, NO. 26, SATURDAY, JUNE 28, 1980 at 2605.

ed, the notice to individual recipients and that allegedly it was published less than 60 days before termination of the program was scheduled to become effective, (3) whether the termination of the adult eyeglass program violated the "best interests" clause of 42 U.S.C. § 1396a(a)(19) in that termination of the program would leave many of the recipients financially unable to buy glasses, (4) whether termination of the adult eyeglass program violated 42 U.S.C. § 1396d(a)(12) by impermissibly singling out one service within a group of optional services, (5) whether DPW failed to appoint adequate numbers of consumers to and failed to "fully consult" with the state's Medical Assistance Advisory Committee ("MAAC") prior to attempting to terminate the programs, (6) whether the DPW's public notice of August 2, 1980 which announced the termination of the eyeglass program violated the Commonwealth Documents Act, 45 P.S. § 1102 et seq. and (7) whether the cut-off date of September 30, 1981 by which all Medical Assistance recipients had to file appeals contravenes the Due Process Clause.

## II. DISCUSSION

### A. Defendants' Contention that this Court Lacks Jurisdiction.

The defendants argued, prior to the amendment of 28 U.S.C. § 1331, that this court lacked subject matter jurisdiction over this case because the plaintiffs' case lacked actual damages in controversy of $10,000 as was then required by the statute.[3] Secondly, defendants contend that under 28 U.S.C. § 1343(a)(3) plaintiffs' due process claim is frivolous because its effect would be to preclude termination of the eyeglass program indefinitely.

**3.** 28 U.S.C. § 1331 reads as amended on December 1, 1980:
 The district courts shall have original jurisdiction of all civil actions under the Constitution, laws, or treaties of the United States. Pub.L. No. 96–486, 94 Stat. 2369.

**4.** 28 U.S.C. § 1343(a)(3) reads:
 (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

■ On December 1, 1980, the Congress amended section 1331 to eliminate the $10,000 amount in controversy requirement. Since there is now no damage requirement, jurisdiction exists under section 1331.

■ As to 28 U.S.C. § 1343(a)(3)[4] I do not find that plaintiffs' due process claim is frivolous as it is well established that plaintiffs need only allege a constitutional claim of sufficient magnitude to invoke this court's jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Clearly, plaintiffs' contention that "the notice sent to recipients was seriously deficient for it failed to fully and clearly explain the proposed ·cutbacks as well as denying individuals a right to a hearing" meets the test of a sufficient allegation of a constitutional claim.

### B. The Need for DPW to give Medical Assistance Recipients Notice and a Hearing before Terminating Benefits

■ Turning now to the merits, plaintiffs argue that the notice sent to individual recipients informing them of the termination of orthopedic shoes and eyeglasses for adults was defective because it contained a cut-off date, September 30, 1980; an appeal after said date would not be heard. The notices sent to individuals for both programs contain the same language regarding appeals which reads in pertinent part:

 These changes apply to all persons eligible for services under the Medical Assistance Program. Benefits you receive through other State or Federal government programs are not affected.

 If you think that there are reasons why any or all of the changes made by the

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

regulations should not be applied to you, you can file an appeal and will be given a fair hearing. At the hearing you will be given an opportunity to present your reasons as to why the regulations should not be applied to you.

If you decide to file an appeal you must do so by September 30, 1980. If you appeal will not be heard and the changes made by the regulations will apply to you. You may file your appeal by writing to your local County Assistance Office by September 30, 1980. If you appeal by September 30, 1980, the particular change or changes which you appeal will not apply to you pending the outcome of your appeal. Your appeal must state the reasons why you believe that any of the changes listed above do not apply to you. You may request your County Assistance Office to assist you in filing an appeal. You may represent yourself or have a lawyer, relative, or a friend represent you at the fair hearing. The changes made by the regulations have been adopted under the authority of the Public Welfare Code, at 62 P.S. §§ 403(b), 443.3 and 443.4.

NOTE: IF YOU HAVE ANY QUESTIONS CONCERNING THE CONTENTS OF THIS NOTICE OR THE CHANGES MADE TO THE REGULATIONS, OR IF YOU WISH TO OBTAIN A COPY OF THE REGULATIONS AS PUBLISHED IN THE PENNSYLVANIA BULLETIN, CONTACT YOUR COUNTY ASSISTANCE OFFICE.

Plaintiffs contend that this cut-off date discourages recipients from appealing the termination and that this absolute termination date violates recipients' rights to a fair hearing before termination and, in so doing, this mandatory cut-off date violates federal regulations 42 C.F.R. §§ 431.206(c)[5] and 431.210(d)[6] promulgated by the Department of Health & Human Services and violates the due process clause of the U.S. Constitution. I hold that both notices sent to recipients conform to the requirements of 42 C.F.R. §§ 431.206 and 431.210(d) in that recipients are adequately advised of their rights in regard to the intended agency action. The notices follow the regulation and clearly inform recipients of their right to a hearing and the method by which they may obtain one. Further, the September 30, 1980 cut-off date to file notice of appeal has not been shown to be unreasonable under the regulation. Indeed, the applicable federal regulation, 42 C.F.R. § 431.221(d),[7] requires appeals to be filed within 90 days after notice of a proposed change is mailed to recipients. Here, individual notices were sent to recipients during the week of July

5. 42 C.F.R. § 431.206 reads as follows:

(a) The agency must issue and publicize its hearing procedures.

(b) The agency must, at the time specified in paragraph (c) of this section, inform every applicant or recipient in writing—

(1) Of his right to a hearing;

(2) Of the method by which he may obtain a hearing; and

(3) That he may represent himself or use legal counsel, a relative, a friend, or other spokesman.

(c) The agency must provide the information required in paragraph (b) of this section—

(1) At the time that the individual applies for Medicaid; and

(2) At the time of any action affecting his claim.

6. 42 C.F.R. § 431.210(d) reads:

A notice required under § 431.206(c)(2) of this subpart must contain—

(d) An explanation of—

(1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing; or

(2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

(e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

7. 42 C.F.R. § 431.221 states:

(a) The agency may require that a request for a hearing be in writing.

(b) The agency may not limit or interfere with the applicant's or recipient's freedom to make a request for a hearing.

(c) The agency may assist the applicant or recipient in submitting and processing his request.

(d) The agency must allow the applicant or recipient a reasonable time, not to exceed 90 days from the date that notice of action is mailed, to request a hearings [sic].

27, 1980. The DPW's deadline of September 30, 1980 does not violate the proscription of 42 C.F.R. § 431.221(d).

C. The Requirement of Public Notice Pursuant to 42 C.F.R. § 447.205 Before Changes in Method or Level of Reimbursement for a Service Are Made

Plaintiffs argue next that the defendants failed to comply with the federal regulation, 42 C.F.R. § 477.205, which requires a state agency to give public notice of its intent to change the level of reimbursement for benefits. Plaintiffs contend that the second public notice announcing termination of the eyeglass program for adults, published on August 2, 1980 in the *Pennsylvania Bulletin*, was in violation of 42 C.F.R. § 477.205 [8] because this notice was published after recipients were given individual notice in July 1980 of termination of service. Further, plaintiffs contend that the regulation is violated because publication of notice on August 2, 1980 fails to comply with the regulation's requirement that public notice be given 60 days before the effective date of the proposed change, which in this case was September 1, 1980.

■ DPW contends that plaintiffs' reliance on 42 C.F.R. § 447.205 is misplaced in that this regulation was never intended to apply to a termination of an optional benefit. In order to clarify whether this provision applies to the termination of eyeglasses for adults DPW sought advice from the local regional office of the U.S. Department of Health and Human Services. The agency responded that:

8. 42 C.F.R. § 447.205 states in relevant part:
 Public notice of changes in Statewide method or level of reimbursement.
 (a) When notice is required. Except as specified in paragraph (b) of this section, the agency must provide public notice of any proposed change in the Statewide *method or level of reimbursement* for a service, if the change is expected to increase or decrease Medicaid payments for that service by 1 percent or more during the 12 months following the effective date of the change.
 (b) When notice is not required. Notice is not required if—

[It is] the concurring legal opinions of this office and our Central Office, Health Care Financing and Human Development Services Division, that 42 C.F.R. § 447.205 relates to payment rates and methods, and not to changes in coverage, such as the State agency's termination of optional services.

Letter from John A. Kane, Assistant Attorney General, Office of Legal Counsel, Department of Public Welfare from Diane C. Moskal, Assistant Regional Attorney, Department of Health, Education & Welfare, (September 12, 1980).

■ It is well established that unless the agency's construction of its own regulation is clearly erroneous the court should accord the agency interpretation great deference. *See Lucas Coal Co. v. Interior Bd. of Mine Operations Appeals*, 522 F.2d 581 (3d Cir. 1975); *Mount Joy Construction Co. Inc. v. Schramm*, 486 F.Supp. 32 (E.D.Pa. 1980). After reviewing the express language of the regulation, the entire context of the regulations in which Section 447.205 is found and the agency's own interpretation of the regulation, I find that Section 447.205 is inapplicable to the public notice of August 2, 1980 announcing termination of the adult eyeglass program. In the instant case DPW intends to eliminate the eyeglass program for adults; it does not seek to change the method by which providers are paid for their services or the amount they are paid.

D. The "Best Interests" Provision of 42 U.S.C. § 1396a(a)(19)

■ Plaintiffs argue that the defendants termination of the adult eyeglass program

(1) The change is being made to conform to Medicare methods or levels of reimbursement;
(2) The change is required by court order; or
(3) The change is based on changes in wholesalers' or manufacturers' prices of drugs or materials, if the agency's reimbursement system is based on material cost plus a professional fee.

(d) Publication of notice. The notice must—
(1) Be published at least 60 days before the proposed effective date of the change;

violates Section 1396a(a)(19) of the Social Security Act which requires that state medical plans be administered in the "best interests" of the recipients. Plaintiffs contend that there are alternative methods by which DPW could save money and still retain this program in its Medical Assistance package. Therefore, plaintiffs argue that the department is not acting in the "best interests" of recipients by terminating this program which provides such an important health aid to recipients when there are other mechanisms by which to save money.

Section 1396a(a)(19) provides:

(a) A State plan for medical assistance must—

(19) provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined and such care and services will be provided in a manner consistent with simplicity of administration and the best interests of the recipients;

An analogous fact pattern and argument was presented to Chief Judge Lord of this court in *Budnicki v. Beal*, 450 F.Supp. 546 (E.D.Pa.1979). In *Budnicki*, Judge Lord decided the applicability of the "best interests" provision to DPW's earlier proposed termination of the orthopedic shoe program. In finding that the termination was not against Medical Assistance recipients best interests, within the meaning of the statute, in that it was reasonably related to a legitimate state function, Judge Lord said:

[I]t is not necessary here to decide whether § 1396a(a)(19) can be used to halt a termination of an optional service because I find that if such constraint is applicable, the state has met its burden to administer the program in the "best interests of recipients". I believe that in applying the "best interests of recipients" standard in such a case, a court is constrained to decide only whether an alteration of a state's Medicaid program is rationally related to the best interests of recipients. In other words, any change which is not irrational or arbitrary and counterproductive to the medical well-being of all Medicaid recipients must be

sustained. The court is not in a position to determine which medical services should be provided to poor people given limited state finances and how to optimize that system.
*Budnicki v. Beal, supra,* at 557.

In their brief, plaintiffs concede that "the 'best interest' regulations of the federal statutory scheme has a limited role" and they contend that they would not ask this court's "assistance in writing the Department's budget and establishing the scope of its many programs". Plaintiffs' Memorandum of Law at 50. However, it is a rewriting of the Department's budget they in fact seek in this action. The defendants' decision to terminate this program was made after an administrative determination that DPW lacks the funds necessary to provide this service. *See* Public Notice of Termination of Eyeglass Program, June 28, 1980, *supra,* fn. 1. While the wisdom of this action may long be debated, it is clear that the termination is "rationally related to the best interests of recipients" as enunciated in *Budnicki, supra.* In applying the *Budnicki* test to the eyeglass program, I am constrained to find that the defendants' decision to terminate the program was not arbitrary or irrational.

E. Violation of 42 U.S.C. § 1396d(a)(12) By Selecting To Terminate Eyeglasses For Adults In A Group of Optional Benefits

The Medicaid statute provides numerous optional benefits that a state may choose to provide for its Medical Assistance recipients. Among this group of optional benefits are the ones set forth in 42 U.S.C. § 1396d(a)(12) which Pennsylvania has elected to provide:

prescribed drugs, dentures and prosthetic devices; and eyeglasses prescribed by a physician skilled in diseases of the eye or by an optometrist, whichever the individual may select.

Plaintiffs contend that if the state of Pennsylvania elects to provide the services listed in 42 U.S.C. § 1396d(a)(12) it must provide all of the services listed in that subsection or none of the services. Here, the state

seeks to eliminate the eyeglass program for persons aged 21 years of age or older after making an administrative determination that it could not provide eyeglasses to persons of all ages who suffer from refractive vision problems as well as pathological vision impairment.

I note that plaintiffs have not cited any authority for their argument that DPW cannot elect to eliminate an optional benefit within a subsection which lists several optional benefits as does Section 1396d(a)(12). DPW relies on the federal agency's interpretation of its own regulation to support the argument that the state may choose to provide any *one* of the four services listed in the regulations. It is clear that the relevant interpretative guidelines would permit terminating only one of the services within the group.[9] Neither the statute nor the regulations support plaintiffs' position that in order to eliminate eyeglasses for persons 21 years and older DPW must eliminate all of the benefits it is providing from that section, i. e. prescribed drugs, dentures and prosthetic devices. . . . Accordingly, I conclude that § 1396d(a)(12) is not violated.

F. The Alleged Failure of DPW to Consult with and to Appoint an Adequate Number of Consumer Members to the Medical Assistance Advisory ("MAAC") Committee Prior to Announcing Its Intent to Terminate the Eyeglass and Orthopedic Shoe Program for Adults.

With regard to DPW's dealings with MAAC, plaintiffs contend the state should not be allowed to terminate the orthopedic shoe program and eyeglass program for persons 21 years and over because (1) DPW failed to appoint to the Committee an adequate number of consumers, (2) DPW failed to provide MAAC with technical assistance as required by 42 C.F.R. § 431.12(f)(1), and (3) the Department failed to consult with the Committee before terminating the programs. I will discuss each of these in turn.

 Plaintiffs argue that the MAAC was never properly constituted in terms of consumer members in accordance with 42 C.F.R. § 431.12(d). Plaintiffs concede that no specified percentage of consumers is mandated in the regulations; however, they argue that courts have enforced federal guidelines providing that the optimum number of consumers on a state MAAC is 51%. In support of their contention, plaintiffs cite the case of *Dominguez v. Milliken*, CCH Medicare & Medicaid Guide ¶ 26,633 (W.D.Mich.1973) for the proposition that courts have enforced federal program guidelines regarding the number of consumer members. With respect to consumer representation on State MAACs, 42 C.F.R. § 431.12(d) states:

> *Committee membership.* The committee must include—
>
> (2) Members of consumers' groups, including Medicaid recipients, and consumer organizations such as labor unions, cooperatives, and consumer-sponsored prepaid group practice plans, and others.

It must be noted that the case of *Dominguez v. Milliken*, CCH Medicare & Medicaid Guide ¶ 26,663 (W.D.Mich.1973), on which plaintiffs rely, is distinguishable from the instant case. In *Dominquez* the evidence disclosed that at the time the state agency announced cutbacks in the medical assistance program the head of the agency was not even aware that there was a medical advisory committee; therefore, there could not have been any sort of participation by the committee as required by federal regulations. Further, the membership of the Michigan MAAC was composed of 18 physicians and health professionals and only two consumers. The court noted with approval that the HEW guidelines recommended 51% consumer membership and ordered that the consumer membership be raised to at least 45%. However, it is clear from the language of the opinion that the court felt compelled to dictate the number of consumers which should comprise the committee because of the state's total disregard for the federal law. In pertinent part the court stated:

---

9. *See* HCFA Regional Office Manual, Part 6 Medicaid Guidelines, Transmittal No. 32 (June 19, 1979), 4 Medicare & Medicaid Guide (CCH ¶ 30,393).

While the regulation in issue does not specify any particular, precise numerical requirement for consumer representation on the Michigan Medical Care Advisory Committee, this court finds as a matter of fact and law that defendants' cavalier response to the plain intent of that regulation does not conform to the applicable and binding federal standard. The court is satisfied that the tenor and spirit of the regulation recorded at 45 C.F.R. § 246.10 [now 42 C.F.R. § 431.12] command that a significant consumer voice, including medicaid recipients, be heard on the Medical Care Advisory Committee and, through that body, be influential in the administration of the federally funded medical assistance program. While the court is reluctant to reduce the clear federal policy to a specific numerical value, defendants' conduct necessitates that the court exercise its best judgment to set a figure which reasonably effectuates Congressional intent as properly articulated by the Department of Health, Education and Welfare.

Turning now to the instant case, even though the number of consumer oriented members on the MAAC was not 51%, as suggested by the HEW guidelines of 1971, there was approximately 30% consumer presence on the committee when DPW announced its plan to terminate the programs; at the time of trial of this action the percentage of consumers had been increased to approximately 38%. Consumer participation to the optimum level suggested by the federal guideline appears desirable, but is not mandated by regulation. The limited evidence presented at final hearing on this subject does not provide a sufficient basis to enjoin defendants from discontinuing the subject program. While the composition of the MAAC could be improved, the present composition does not violate 42 C.F.R. § 431.12(d).

■ Next, plaintiffs assert that DPW failed to discharge its duty under 42 C.F.R. § 431.12(f) to provide the MAAC with independent technical assistance to review the proposed program terminations. Specifically, 42 C.F.R. § 431.12(f)(1) provides:

(f) Committee staff assistance and financial help. The agency must provide the committee with—

(1) Staff assistance from the agency and independent technical assistance as needed to enable it to make effective recommendations.

After reviewing the testimony presented at final hearing and the minutes of the MAAC meetings and of its subcommittees, I cannot find that DPW has intentionally withheld technical assistance from the MAAC regarding the termination of the adult eyeglass program. As to the eyeglass program, the first time independent technical assistance is mentioned is in the minutes of the MAAC meeting held on April 24, 1980. The minutes report that because of a court order the eyeglass program will be reinstated for a ten-day period, May 7, 1980 to May 17, 1980, and that "the consumer subcommittee has written the Department requesting independent technical assistance to review the possibility of a program extension." The minutes of this MAAC meeting also provide that the consumer subcommittee had asked that the program be continued until the study could be completed. DPW's response, as reflected by the minutes, was that continuation of the program was financially impossible. Thereafter, at the June 19, 1980 MAAC meeting the members resolved that the Department refer the proposed terminations to the Medical Subcommittee for its recommendations. The record discloses that DPW first sought to discontinue the program in July of 1977. The only ground ever advanced by DPW for discontinuing the eyeglass program for those 21 and over has been financial inability to continue this optional benefit to adult recipients. I cannot conclude that defendants should be enjoined from discontinuing the program because of failure to provide technical assistance on this state budgetary matter; particularly where no request for assistance was made until April of 1980.

■ Lastly, plaintiffs contend that DPW failed in its duty to fully consult with the state Medical Assistance Advisory

Council as mandated in 42 C.F.R. § 431.-12(e) before terminating the programs. 42 C.F.R. § 431.12(e) provides in pertinent part:

The committee must have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program.

The minutes of the June 19, 1980 MAAC meeting reveal that the members were informed of DPW's intention to terminate the programs at that meeting and that they passed a resolution to ask DPW to refer the problem of these terminations to the Medical Subcommittee for its recommendations. Although free to do so neither the MAAC nor any of its subcommittees ever made any recommendations regarding the proposed terminations. After the June 19, 1980 meeting of MAAC, the record discloses that the Pharmacy Subcommittee met once, the Consumer Subcommittee met twice and that the MAAC met twice; however, even though the members knew when DPW planned to terminate the programs they failed to submit any alternative recommendations to the proposed program eliminations. I cannot find that DPW has not met its obligation under 42 C.F.R. § 431.12(e) because the evidence clearly shows that the MAAC members knew of the proposed terminations but failed to generate any recommendations for consideration by DPW even though they had adequate time to do so.

G. DPW's Public Notice of August 2, 1980 Violated the Commonwealth Documents Law, 45 P.S. § 1102 *et seq.*

▉▉ Plaintiffs argue that DPW's public notice of June 28, 1980 is defective in not including those persons aged 21, and thus violative of section 201 of the Documents Law, 45 P.S. 1201, dealing with notices of proposed rulemaking. Also, plaintiffs appear to argue that the notice of August 2, 1980 announcing termination of the adult eyeglass program violated section 203, 45 P.S. § 1203, of the law because allegedly it was published untimely. Section 203, 45 P.S. § 1203, provides as follows:

Except as otherwise provided by regulations promulgated by the joint committee, the effective date specified in any administrative regulation or change therein subject to the provisions of sections 201 and 202 shall be not less than thirty days after the notice of proposed rule making required thereby has been given . . . .

The defendants contend that as early as July 30, 1977 DPW published notice, 7 Pa. Bull. 2149, of proposed rulemaking which provided that pursuant to a court order the Department was required to open coverage of its MA eyeglass program to include persons having refractive as well as pathological eye disorders. The Department believed it was inadequately funded to administer the program in this manner; therefore, it sought to exclude through rulemaking persons 21 years of age or older. In accordance with 42 P.S. § 1201 the notice invited comments on the proposed regulation and specified that comments had to be submitted to DPW within 30 days of notice of publication. During the 30-day comment period DPW received 30 letters concerning the proposed regulation. After reviewing the letters DPW decided its funding was insufficient to meet the increased patient population. The notice of final rulemaking, 7 Pa. Bull. 2559, was published on September 3, 1977 stating that effective as of that day persons 21 years of age and older would no longer be provided with eyeglasses under the Medical Assistance program.

The issue is whether DPW can rely upon its earlier notices of July 30, 1977 and September 3, 1977 to satisfy the requirements of the Documents Act. I note that the purpose of the Act is to give public notice of changes in existing regulations, to invite comments from the public, to give the agency an opportunity to consider the comments and, thereafter, to give the public 30 days notice before a change in a regulation becomes effective. Neither party has cited any case from a court of Pennsylvania construing the issue of compliance with the Act by reliance on an earlier valid notice of termination and I have found none. If the

earlier notice can be relied on, of course DPW has met the requirements of the Act. I find that DPW has been engaged since 1977 in one continuing effort to terminate the program. It is my belief that the Supreme Court of Pennsylvania would find that the various notices relied upon by DPW, in this continuing effort to terminate the program, to be sufficient compliance with the Act. Accordingly, I find no violation of the Document Act.

**H. DPW's Cut-Off Date of September 30, 1980 by Which Recipients Must File Appeals Contravenes the Due Process Clause**

 There being no state law or federal statutory basis for granting relief to plaintiffs, I turn now to their due process argument. Plaintiffs contend that the September 30, 1980 cut-off date discourages recipients from appealing the termination of the programs; that the notice misleads recipients as to their appeal rights; and that it impermissibly curtails recipients' rights to appeal because it absolutely denies to recipients a right to appeal termination of benefits after September 30, 1980.

While I agree that the benefits here are an important property interest, as "medical care is as much 'a basic necessity to life' to an indigent as welfare assistance," *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 259, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306, I do not find that the cut-off date for appeals violates the due process rights of plaintiffs. The individual notices to recipients contain all of the information required by federal and state regulations. As to the proposed terminations of the adult eyeglass and orthopedic shoe programs, the individual notices are sufficiently clear to advise recipients of these program terminations and their appeal rights thereunder. Plaintiffs' contention appears to be that after the final date for notice of appeal a recipient may discover a previously unknown basis for objecting to the termination of the programs. Defendants assert that this claim is frivolous, pointing out that a program could never be terminated if all possible future claims first had to be identified. Although I have found that plaintiffs' allegation of a due process claim is sufficient to confer jurisdiction on this court, I do not find that substantively it is meritorious. Certainly, due process does not require continuation of the program until all future claims are identified. I cannot foresee any valid claim which can arise after the programs have been terminated, and plaintiffs have not identified any such claims. Apparently, plaintiffs argue that entitlement might exist under other programs and that the notice here involved will discourage the taking of appeals from denial of other benefits. There is no evidence of actual discouragement of appeals and I observe that the notice expressly advises that other benefits are not affected.

In addition, as to claims after the September 30, 1980 cut-off date, it is clear that claimants' appeal rights are adequately protected by DPW's own continuing internal operating regulations. DPW's internal appeal regulations provide:

§ 275.1 APPEAL AND FAIR HEARING POLICY

(a) *Right to appeal and have a fair hearing.*

(2) . . . every person applying for or receiving a money payment, medical assistance [has] the right to appeal from any Departmental action or failure to act and to have a hearing if dissatisfied with any decision refusing or discontinuing assistance in whole or in part.

(4) The term 'assistance' as used in this Chapter means a money payment, medical assistance, food stamps, and services.

These regulations have the effect of providing recipients a continuing right of appeal which adequately satisfies due process. I agree with DPW that "to the extent that any recipient at some time in the future is denied a pair of orthopedic shoes or eyeglasses under some other Public Welfare Program, such as WIN or EPSDT, he or she, under State law, is entitled to be given notice of such action along with the right to

appeal the denial of the benefits *under that particular* program." Defendants' Memorandum In Opposition at 19–20. The termination of the adult eyeglass and orthopedic shoe program is an absolute termination of an optional benefit under the Medical Assistance program which does not affect an applicant's eligibility for similar services under any other state or federal program.

### III. CONCLUSION

For the reasons set forth above, I find that plaintiffs have not met their burden of establishing by a preponderance of the evidence their entitlement to any of the relief requested; therefore, I will enter judgment in favor of the defendants and against the plaintiffs on the challenged programs.