693 F.2d 324
 CHARLESTON MEMORIAL HOSPITAL, South Carolina Hospital
Association, Abbeville County Memorial Hospital, Aiken
Community Hospital, Allendale County Hospital, Anderson
Memorial Hospital, Bailey Memorial Hospital, Baker Hospital,
Bamberg County Hospital, Beaufort County Memorial Hospital,
Byerly Hospital, Chesterfield General Hospital, Clarendon
Memorial Hospital, Colleton Regional Hospital, Conway
Hospital, Inc., Darlington Hospital, Edgefield County
Hospital, Georgetown County Memorial Hospital, Grand Strand
General Hospital, Greenville Hospital System, Jasper County
General Hospital, Laurens District Hospital, Lee County
Memorial Hospital, Lexington County Hospital, Loris
Community Hospital, Lower Florence County Hospital, McLeod
Regional Medical Center, Marion County Memorial Hospital,
Mullins Hospital, North Trident Regional Hospital, Oconee
Memorial Hospital, Providence Hospital, Richland Memorial
Hospital, St. Eugene Community Hospital, Self Memorial
Hospital, Spartanburg General Hospital, Williamsburg County
Memorial Hospital, Wilson Clinic and Hospital, York General
Hospital, Kaney Bookert and Rosa Brunson, Appellants,
v.
Virgil L. CONRAD, Commissioner of Social Services; John C.
Williams, Jr., in his official capacity as Chairman, and the
South Carolina Board of Social Services; Richard S.
Schweiker, in his official capacity as Secretary of Health
and Human Services, United States Department of Health and
Human Services, Appellees.
 No. 82-1351.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 14, 1982.
Decided Nov. 11, 1982.
 
 Margaret M. Hathaway, Philadelphia, Pa. (Leonard C. Homer, Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellants.
 Steven J. Edelstein, Asst. Regional Atty., Atlanta, Ga. (Carl H. Harper, Regional Atty., Dept. of Health and Human Services, Atlanta, Ga., on brief), for federal appellee.
 David C. Eckstrom, Asst. Atty. Gen., Columbia, S.C. (Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Deputy Atty. Gen., Vance J. Bettis, Asst. Atty. Gen., Reddick A. Bowman, Jr., Asst. Gen. Counsel, Columbia, S.C., on brief), for appellees.
 Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 The South Carolina Hospital Association, 39 individual providers of hospital services participating in the South Carolina Medical Assistance Program, and two South Carolina residents ("appellants") brought this action seeking declaratory and injunctive relief against the South Carolina Department of Social Services ("DSS") and the United States Secretary of Health and Human Services ("HHS"). The action arose out of certain administrative actions reducing Medicaid coverage. The district court, with the consent of the parties, issued a preliminary injunction on December 28, 1981, pending a hearing on the merits. Following a hearing on January 27-28, 1982, the district court entered an order dissolving the preliminary injunction and denying all permanent injunctive and declaratory relief requested by the plaintiffs. We affirm.
 
 I.
 A.
 
 2
 Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396 et seq. (1974) ("the Act"), provides for the establishment of cooperative federal-state programs, commonly known as "Medicaid," "[f]or the purpose of enabling each state, as far as practicable under the conditions in each state, to furnish" medical assistance to certain individuals[1] "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. Sec. 1396 (1974). States that elect to participate in the Medicaid program are eligible to receive matching funds from the federal government if the state establishes a "state plan" for medical assistance that comports with statutory and regulatory requirements under the Act. 42 U.S.C. Sec. 1396b. See 42 U.S.C. Sec. 1396a(a)(1)-(44) (1974); 42 C.F.R. Sec. 447 et seq.
 
 
 3
 Section 1396d(a)(1)-(5) requires participating states to provide for inpatient hospital services, outpatient hospital services, other laboratory and x-ray services, skilled nursing facilities, and physicians' services. The extent of medical assistance provided by the state for each of the services must be "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. Sec. 440.230(b). See also 42 U.S.C. Sec. 1396a(a)(10) (1974).
 
 
 4
 A state has broad discretion, however, in developing standards for determining the extent of coverage it will provide in each of the mandatory categories. See Beal v. Doe, 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977). Section 1396a(a)(17) requires only that a state plan for medical assistance "include reasonable standards ... for determining ... the extent of medical assistance under the plan which ... are consistent with the objectives of [the Act]."[2]
 
 
 5
 Once a state establishes the extent of coverage it will provide in each of the mandatory categories, it must determine the rate at which it will reimburse medical providers for the covered services. Section 1396a(a)(13)(A) of the Act requires that state plans provide
 
 
 6
 for payment ... of the hospital, skilled nursing facility, and intermediate care facility services approved under the plan through the use of rates (determined in accordance with methods and standards developed by the State and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs...) which the State finds and makes assurance satisfactory to the Secretary, are reasonable and adequate to meet the cost which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality....[3]
 
 
 7
 Thus, a state plan must provide for reimbursement to hospitals at a rate that:(1) is determined in accordance with methods and standards developed by the state;
 
 
 8
 (2) takes into account the situation of hospitals which serve a disproportionate number of low income patients with special needs;
 
 
 9
 (3) is reasonable and adequate to meet the costs that are incurred by efficiently and economically operated facilities; and
 
 
 10
 (4) assures that eligible Medicaid recipients will have reasonable access to inpatient hospital services of adequate quality.
 
 
 11
 If a state plan comports with the foregoing requirements, along with the other requirements under the Act, the Secretary must approve it. 42 U.S.C. Sec. 1396a(b) (1974); Arizona State Dep't of Public Welfare v. Dep't of Health Education and Welfare, 449 F.2d 456, 461 (9th Cir.1971), cert. denied, 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972). Once approved, a state plan is subject to continual scrutiny by the Secretary to ensure continued compliance with federal requirements. Id. Amendments to a state plan also must be submitted to the Secretary for review. 45 C.F.R. Sec. 201.3.
 
 B.
 
 12
 The state of South Carolina participates in the Medicaid program under an approved state plan. DSS, the state agency responsible for administering the South Carolina Medicaid program, requested the state legislature to allocate $260 million for its proposed health care budget for the 1982 fiscal year (July 1, 1981--June 30, 1982). Of the $260 million budget, DSS had projected the cost of inpatient and outpatient hospital services at $84 million. Thereafter, the legislature appropriated only $232.6 million for Medicaid, which resulted in a reduction of funds available for inpatient and outpatient services from the projected $84 million to $67 million.[4]
 
 
 13
 DSS responded to the deficient appropriation by implementing a series of reductions in medical services that became effective July 1, 1981. Among the proposed reductions were a reduction in inpatient hospital coverage from 40 to 18 days per Medicaid recipient per year[5] and a reduction in outpatient hospital visits from an unlimited number to 18 per Medicaid recipient per year. The rate at which hospitals were to be reimbursed for the days covered, however, was not changed. DSS planned to continue reimbursing hospitals at rates determined in accordance with Medicare cost principles. See 42 C.F.R. 405.401 et seq. On September 14, 1981, an amendment to the South Carolina state plan reflecting these changes was submitted by DSS to HHS for review.[6] The amendment was approved by HHS on October 16, 1981, and given an effective date of July 1, 1981.
 
 
 14
 Thereafter, DSS reevaluated the budget and determined that several costs had been underestimated, necessitating additional reductions. On December 16, 1981, DSS notified Medicaid providers that, effective January 1, 1982, it would further reduce inpatient hospital coverage from 18 to 12 days per Medicaid recipient per year.[7] Again, no change in the rate of reimbursement for the days covered was proposed. An amendment to the state plan reflecting the further reductions in inpatient hospital coverage was submitted to HHS on March 18, 1982. On May 21, 1982, the amendment was approved by the Secretary and given an effective date of January 1, 1982.
 
 C.
 
 15
 On December 21, 1981, plaintiffs filed this action seeking declaratory and injunctive relief from both the reductions in inpatient and outpatient hospital coverage implemented by DSS on July 1, 1981, and the further reductions scheduled to take effect on January 1, 1982. They alleged that the reductions violated several federal requirements under the Act. Plaintiffs also sought an injunction ordering the Secretary to require states to submit for approval changes in Medicaid services prior to implementation.
 
 
 16
 Plaintiffs alleged: (1) that the reductions essentially raise a reimbursement issue,[8] and are subject, therefore, to the requirements of section 1396a(a)(13)(A) and the implementing regulations; (2) that the reduced services violate 42 C.F.R. Sec. 440.230(b) because the level of coverage no longer is "sufficient in amount, duration, and scope to reasonably achieve its purpose," and that the reductions were improper in that they were based solely on budgetary considerations; and (3) that South Carolina's rate of reimbursement violates section 1396a(a)(13)(A) because (a) the state plan does not take into account the situation of hospitals that serve a disproportionate number of low income patients; (b) the state plan does not provide hospital funds that are reasonable and adequate to meet the costs that are incurred by economically operated facilities; and (c) the hospital funds provided by the state plan are not adequate to assure that eligible Medicaid recipients will have reasonable access to inpatient hospital services of adequate quality.
 
 
 17
 In addition to their allegations that the challenged reductions do not comply with substantive requirements of the Act, plaintiffs alleged that the amendments to the state plan were implemented in violation of procedural requirements of the Act in that (1) DSS did not give public notice of the reductions and (2) the reductions were given effect before HHS approved them.
 
 
 18
 Finally the hospitals alleged that the reductions deprive them of property without due process of law because they are required under the Hill-Burton Act, 42 U.S.C. Secs. 291 et seq., 300g et seq. (1976 and 1980 Supp.), to participate in the Medicaid program, and compensation to hospitals for services provided Medicaid recipients no longer is adequate to cover the hospitals' costs.
 
 
 19
 On December 28, 1981, the district court entered a preliminary injunction against implementation of the reductions pending a hearing on the merits. Following the hearing on January 27-28, 1982, the district court entered an order dissolving the preliminary injunction and denying all declaratory and permanent injunctive relief requested by the plaintiffs.
 
 II.
 
 20
 Appellants contend that the reductions in Medicaid reimbursement are in conflict with the substantive requirements of federal law. We disagree.
 
 A.
 
 21
 The district court determined that the reductions implemented by DSS were reductions in the level of coverage, and not reductions in the rate of reimbursement, and that section 1396a(a)(13)(A), therefore, did not apply to these reductions. The court further determined that the level of coverage provided under the amended state plan, i.e., 12 inpatient hospital days per Medicaid recipient per year and 18 outpatient hospital visits per Medicaid recipient per year, is sufficient in "amount, duration, and scope" under 42 C.F.R. Sec. 440.230(b) in that it will meet the medical needs of "most" Medicaid recipients in South Carolina.
 
 
 22
 The district court correctly held that "coverage" of services, see 42 U.S.C. Sec. 1396a(a)(10) (Supp.1980); 42 C.F.R. Sec. 440.230(b), and "reimbursement" of covered services, see 42 U.S.C. Sec. 1396a(a)(13)(A) (1974), are separate and distinct concepts under Medicaid law. In Virginia Hospital Ass'n v. Kenley, 427 F.Supp. 781 (E.D.Va.1977), hospitals and Medicaid recipients challenged an amendment to the Virginia state plan limiting inpatient hospital services to 21 days. Despite plaintiffs' challenge to the amendment under several provisions of the Act, the court determined that the issue was merely one of coverage. The court stated:
 
 
 23
 These requirements [of the Act] apply only to medical assistance which is provided under the State Plan and do not define what the extent of the original coverage must be.
 
 
 24
 * * *
 
 
 25
 The bottom line of the instant case is whether a state plan may, in the first instance, limit the days of coverage of inpatient hospital care, and, if so, whether [the limitation] is a reasonable one.
 
 
 26
 Id. at 783-84 (emphasis in original). We agree with that reasoning.
 
 
 27
 In this case, the amendments to the South Carolina plan implemented by DSS reduced the number of covered inpatient hospital days from 40 to 18 per Medicaid recipient per year and limited the previously unlimited number of covered outpatient hospital visits to 18 per Medicaid recipient per year. The rate of reimbursement for the covered days, however, remained unchanged. South Carolina followed Medicare cost principles to establish rates of reimbursement prior to the challenged amendments and has continued to follow this method. As in Virginia Hospital, "the bottom line of the instant case is whether [DSS] may, in the first instance, limit the days of coverage...." 427 F.Supp. at 784. The reduction in Medicaid services under the South Carolina state plan involves an issue of coverage and not one of reimbursement, and the requirements of section 1396a(a)(13)(A) are not applicable.
 
 B.
 
 28
 We must now determine whether the reduced coverage was sufficient in "amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. Sec. 440.230(b). A service is "sufficient in amount, duration, and scope" under 42 C.F.R. Sec. 440.230(b) if it is "adequate to service the needs of most of the individuals eligible for Medicaid assistance." (emphasis added). See Curtis v. Taylor, 625 F.2d 645, 653 (5th Cir.1980), modified, 648 F.2d 946 (5th Cir.1980) (reduction in coverage of physician visits to three per month upheld where the needs of 96.1% of the Medicaid population were met by the coverage); Virginia Hospital Ass'n v. Kenley, 427 F.Supp. 781, 786 (E.D.Va.1977) (upholding reduction in coverage to 21 days; 21-day limit would meet needs of 92% of Medicaid population).
 
 
 29
 In the present case, the district court found that a limit of 12 inpatient hospital days will meet fully the needs of 88% of Medicaid recipients requiring inpatient care and that a limit of 18 outpatient hospital visits will meet fully the needs of 99% of Medicaid recipients requiring outpatient care.[9] In light of these percentages, we agree with the district court that the inpatient and outpatient hospital coverage provided under the amended South Carolina state plan will meet the medical needs of "most" eligible Medicaid recipients. Accordingly, we hold that the levels of inpatient and outpatient coverage are "sufficient in amount, duration, and scope to reasonably achieve their purpose." 42 C.F.R. Sec. 440.230(b).
 
 
 30
 Appellants contend, however, that even if the hospital coverage will meet the needs of most Medicaid patients, the limitations on the amount, duration, and scope of coverage are not reasonable because they are based solely on budgetary considerations. We cannot agree.
 
 
 31
 In Virginia Hospital, the court held that the 21-day limit on inpatient hospital services was rationally related to the state's legitimate interest in ensuring the fiscal solvency of its Medicaid program. 427 F.Supp. at 784. The court noted that "[t]he purpose of the Act was to enable states 'as far as practicable,' 42 U.S.C. Sec. 1396, to provide medical assistance to the needy." Id. (emphasis in original). Accord, Jennings v. Alexander, 518 F.Supp. 877, 887 (M.D.Tenn.1981) ("Some cost saving measures must be taken if the Medicaid program is to continue to serve those in need."); Curtis v. Taylor, 625 F.2d 645 (5th Cir.1980), modified, 648 F.2d 948 (5th Cir.1980) (reductions prompted by deficit in Florida's Medicaid budget held proper under the Act.) We find these cases persuasive.
 
 
 32
 The cases cited by appellants to support their contention that the reduced level of coverage implemented by DSS was based improperly upon budgetary considerations are distinguishable from this case. In each of those cases state agencies argued that budgetary considerations had precluded them from complying with express statutory requirements. See Alabama Nursing Home Ass'n v. Harris, 617 F.2d 388 (5th Cir.1980) (state argued inability to comply with section 1396a(a)(13)(E) because the legislature did not appropriate sufficient funds); Potter v. James, 499 F.Supp. 607 (M.D.Ala.1980) (state imposed charge on Medicaid recipient in violation of section 1396a(a)(14)(A)(i)). Here, South Carolina is not seeking to escape compliance with statutory or regulatory requirements. Rather, it has reduced inpatient and outpatient hospital coverage to a level that is fiscally feasible but still satisfies federal requirements.
 
 C.
 
 33
 Aside from its determination that the reduced level of coverage provided under the South Carolina plan is sufficient under the Act, the district court determined that South Carolina's method of reimbursing hospitals for the covered services satisfies the requirements of section 1396a(a)(13)(A)[10] and the corresponding regulations, 42 C.F.R. Sec. 447.250 et seq. The court found that the requirements presumptively were met because South Carolina reimburses hospitals in accordance with the Medicare reimbursement rate formula.[11] We have reviewed the legislative history of section 1396a(a)(13)(A) and regulations thereunder and we affirm.
 
 
 34
 From 1965 until 1972, states participating in the Medicaid program were required to use Medicare methods and standards to determine the reasonable costs for hospital reimbursement. After 1972, reimbursement of reasonable costs was still required under section 1396a(a)(13)(D), but states either could follow the Medicare reimbursement standards, or develop their own methods and standards for determining reasonable costs.[12] The reasonable costs determined by the state, however, could not exceed the reasonable costs reimbursed under the Medicare program. See S.Rep. No. 139, 97th Cong. 1st Sess. reprinted in U.S.Code Cong. & Ad.News 396, 744 (1981). The recent amendment to the reimbursement provision of the Act provides states with even greater flexibility in establishing the appropriate rate of reimbursement. The 1981 amendment to the Act eliminated the requirement that states reimburse hospitals for inpatient hospital services on a Medicare "reasonable cost" basis. The amendment requires instead that Medicaid payments be "reasonable and adequate to meet the cost which must be incurred by efficiently and economically operated facilities...." 42 U.S.C. Sec. 1396a(a)(13)(A) (1974).
 
 
 35
 It is clear from the legislative history of section 1396a(a)(13)(A) that the amendment was intended by Congress to reduce the level of reimbursement paid by the states for hospital inpatient services. The House Energy and Commerce Committee's Report accompanying the amendment reflects a concern for the financial burden facing states participating in the Medicaid program because of hospital cost escalation and reduction of federal funds, and acknowledges that the previous requirements of section 1396a(a)(13)(D) "result in higher levels of inpatient hospital reimbursement than States might set if granted more flexibility." H.Rep. No. 158, 97th Cong., 1st Sess. reprinted in 4 CCH Medicare and Medicaid Guide p 24,486 at 8799-32.
 
 
 36
 South Carolina presently reimburses hospitals for covered inpatient services at rates determined under the Medicare reimbursement formula, the highest rate allowed by law. State plans such as South Carolina's, which were approved under former law and continue to provide for reimbursement at the highest rate allowed by law, clearly satisfy the less stringent requirements of the new reimbursement statute.[13]
 
 III.
 
 37
 Appellants contend that even if the reductions in inpatient and outpatient hospital services do not violate substantive requirements of the Act, they are void as violative of procedural requirements of the Act. We have reviewed appellants' arguments and find them to be without merit.
 
 A.
 
 38
 Appellants first contend that the reductions in inpatient and outpatient services are void because prior notice of such a change is required under 42 C.F.R. Sec. 447.254 and DSS did not publish notice of the proposed reductions. Section 447.254 requires that a state "provide public notice of any significant proposed change in its methods and standards for setting payment rates for inpatient hospital services...." The district court determined that the notice requirement of section 447.254 applies only to reductions in the rates of reimbursement, and not to reductions in the level of coverage, and that the regulation, therefore, did not apply to this case because no changes were proposed in South Carolina's reimbursement structure.
 
 
 39
 In Philadelphia Welfare Rights Organization v. O'Bannon, 517 F.Supp. 501, 507 (E.D.Pa.1981), the court found that the notice requirement of 42 C.F.R. Sec. 447.205, which is virtually identical to 42 C.F.R. Sec. 447.254,[14] applies only to changes in reimbursement rates and not to changes in coverage. The court based its decision on "the express language of the regulation, the entire context of the regulation in which section 447.205 is found, and the agency's own interpretation of the regulation." Id.
 
 
 40
 As with section 447.205, the Secretary has construed section 447.254 to require notice only of changes in reimbursement methodology and not of changes in levels of coverage. The Secretary's interpretation of his own regulation "should be accepted by the courts unless it is shown to be unreasonable or inconsistent with statutory authority." Fairfax Nursing Center, Inc. v. Califano, 590 F.2d 1297, 1301 (4th Cir.1979). We find the Secretary's interpretation of section 447.254 to be neither unreasonable nor inconsistent with statutory authority.
 
 
 41
 Because the district court's construction of section 447.254 is consistent with both the plain language and the Secretary's interpretation of the regulation, we affirm.[15]
 
 B.
 
 42
 Appellants also contend that the reductions in inpatient and outpatient coverage were implemented wrongfully because they were given effect before the Secretary approved them.[16] DSS takes the position that the issue is now moot because the Secretary has reviewed the amendments and found them to be in compliance with federal law.
 
 
 43
 We agree with DSS that the issue is now moot to the extent appellants seek to enjoin the implementation of the amendments. Cf. Curtis v. Taylor, 625 F.2d 645 (5th Cir.1980), modified, 648 F.2d 946 (5th Cir.1980) (adequacy of notice issue mooted by subsequent issuance of satisfactory notice).
 
 
 44
 Furthermore, we hold that the Act does not require prior approval. Accord Jennings v. Alexander, 518 F.Supp. 877, 888 (M.D.Tenn.1981).[17] The Act does not expressly provide that a plan may not be modified without prior approval by the Secretary. Congress easily could have given the Secretary such approval authority. Instead, the Secretary is authorized only to impose sanctions when modifications do not comport with the Act. See 42 U.S.C. Sec. 1396c (1974); 45 C.F.R. Sec. 201.6(a)(2). Thus, we must deny appellants the injunctive and declaratory relief which they seek against the Secretary's acquiescence in pre-approval implementation of plan amendments.
 
 IV.
 
 45
 Finally, appellants contend that application of the reduced Medicaid coverage limits constitutes an unconstitutional taking of property because they will be forced to treat without compensation indigent patients who require care beyond the amended plan's time limits.[18] See Cook v. Ochsner Foundation Hospital, 559 F.2d 968, 972 (5th Cir.1977) (requirement that hospital provide free services without regard to amount of assistance provided would be confiscatory and a violation of due process). See also Iredell Memorial Hospital v. Schweiker, 535 F.Supp. 795, 799 (W.D.N.C.1982), appeal filed (4th Cir.) (Hill-Burton Act not intended to require hospitals to finance required free care for indigents). We decline to reach this issue. The court below concluded that appellants failed to offer any significant evidence to support this allegation. Since this finding is not clearly erroneous, we are bound thereby, Fed.R.Civ.P. 52(a).
 
 V.
 
 46
 For the foregoing reasons, the decision of the district court is affirmed.
 
 
 
 [1]
 Medicaid provides for medical assistance to needy families with dependent children and to needy individuals who are aged, blind, or disabled
 
 
 [2]
 "Title XIX's broadly stated primary objective [is] to enable each state, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services." Beal v. Doe, 432 U.S. 438, 444, 97 S.Ct. 2366, 2370, 53 L.Ed.2d 464 (1977)
 
 
 [3]
 This provision, which became effective August 13, 1981, amended the Act pursuant to Sec. 2173 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97-35, 95 Stat. 357 (1981). Prior to this amendment, reimbursement for inpatient hospital services was governed by 42 U.S.C. Sec. 1396a(a)(13)(D), which required that a state plan provide
 for payment ... of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards ... which shall be developed by the state and reviewed and approved by the Secretary and (after notice of approval by the Secretary) included in the plan, except that the reasonable cost of any such services as determined under such methods and standards shall not exceed the amount which would be determined under section 1395x(v) as the reasonable cost of such services for purposes of subchapter XVIII of this chapter....
 
 
 [4]
 Authority to allocate the legislative appropriation among the various health care service categories is delegated by the state legislature to DSS. The $232.6 million appropriation for fiscal year 1982 was allocated by DSS as follows: Nursing Homes--$99,371,231 (42.7%); Inpatient Hospital Services--$58,291,015 (25%); Physician's Services--$25,716,874 (11%); Drugs--$16,877,128 (7.3%); Miscellaneous Services--$10,195,703 (4.4%); Outpatient Services--$9,062,269 (3.9%); Premiums--$8,610,600 (3.7%); and Dental--$4,501,767 (2%)
 
 
 [5]
 There are, however, exceptions to this limitation when certain vital health care needs are involved. Under the state plan there is no restriction on inpatient hospital coverage for approved chemotherapy, immunotherapy, hemodialysis, or obstetric-gynecological care
 
 
 [6]
 Formal notice of the amendment reflecting the proposed reductions in inpatient and outpatient hospital coverage was sent to hospitals on June 23, 1981. DSS personnel had been meeting with hospital representatives to discuss allocation of the appropriation as early as January 1981, however. Public notice of the proposed changes was not given
 
 
 [7]
 In addition to reducing coverage of inpatient and outpatient hospital services, DSS originally proposed to discontinue cost-based reimbursement of covered outpatient services. DSS proposed instead to reimburse outpatient hospital visits at physician visit rates of $8.32 per visit and to reimburse emergency room visits at a rate of $25.00 per visit
 Though these changes in the rate of reimbursement for outpatient services were found by the district court to be valid under the Act, DSS never implemented them, deciding instead to retain a system of cost-based reimbursement. DSS subsequently implemented other changes in outpatient hospital reimbursement whereby hospitals are reimbursed at certain percentages of Medicare reimbursement rates. An amendment reflecting these changes was submitted to HHS on March 16, 1982, and approved by the Secretary on May 19, 1982. This amendment was not before the district court and, accordingly, will not be considered in this appeal.
 
 
 [8]
 DSS did not change its rate of reimbursement when it reduced inpatient and outpatient hospital coverage. It continues to reimburse in accordance with Medicare cost principles. Plaintiffs contend, however, that the distinction between "coverage" and "reimbursement" is artificial because a reduction in either ultimately results in a loss of compensation to hospitals for inpatient and outpatient services
 
 
 [9]
 Appellants challenge the district court's finding that 12 inpatient days will serve fully the needs of 88% of the Medicaid population. Appellants, however, offered no evidence to contradict this percentage figure except the bare statement that the percentage would be lower than that indicated by DSS. We have reviewed the record and find that the district court's determination of the percentage of persons fully served by the coverage is not clearly erroneous. See Fed.R.Civ.P. 52(a)
 
 
 [10]
 See text accompanying note 3 supra
 
 
 [11]
 See Title XVIII of the Social Security Act, 42 U.S.C. Sec. 1395 et seq. (1974)
 
 
 [12]
 See note 3 supra
 
 
 [13]
 Thus, the regulations implementing section 1396a(a)(13)(A) provide that notice of a change in the methods and standards for determining reimbursement rates is not required if the state is adopting a plan that conforms to Medicare methods of reimbursement. See 42 C.F.R. Sec. 447.205(b)(1), 46 Fed.Reg. 58680 (Dec. 3, 1981)
 
 
 [14]
 Prior to the 1981 amendments to the Act, section 447.205 provided that notice was required for "any proposed change in the Statewide method or level of reimbursement for a service." That section was amended, effective December 3, 1981, to make clear that the notice requirement applied only to changes in "rate setting." See 46 Fed.Reg. 58680 (December 3, 1981). Both section 447.254 and section 447.205 now require that a state "provide public notice of any significant proposed change in its methods and standards for setting payment rates." Section 447.254, however, applies only to notice for changes in reimbursement of inpatient hospital services and long-term care facility services, whereas section 447.205 applies to reimbursement changes for all other covered Medicaid services
 
 
 [15]
 In Jennings v. Alexander, 518 F.Supp. 877 (M.D.Tenn.1981), the court held that Tennessee's proposed reduction of inpatient hospital coverage from 20 days to 14 days per year was subject to the notice requirements of section 447.205. Since that decision, however, section 447.205 has been amended to make clear that it applies only to changes in "rate setting." See note 14 supra. The Jennings reading of section 447.205, therefore, is of questionable precedential value
 
 
 [16]
 The initial reductions implemented by DSS, which were submitted to HHS on September 14, 1981, were approved by the Secretary on October 16, 1981, and given an effective date of July 1, 1981. The subsequent reductions implemented by DSS, which were submitted to HHS on March 18, 1982, were approved by the Secretary on May 21, 1982, and given an effective date of January 1, 1982
 
 
 [17]
 In Baldwin v. Schweiker, No. 80-1921 (D.D.C., August 25, 1981), reprinted in CCH Medicare and Medicaid Guide, p 31,479, the court held that the prior approval issue was moot because the Secretary had stated at oral argument that amendments are presumptively invalid until approved. The Secretary has indicated in this case that counsel's statement in Baldwin was an unfortunate misstatement of the Secretary's position. Baldwin does not persuade us to adopt a prior approval requirement
 
 
 [18]
 Under South Carolina law, hospitals are required to provide emergency care regardless of the patient's ability to pay. S.C.Code Reg. 61-16 Sec. 309 (1980). Most of the appellant hospitals are under a further, federal obligation to provide "a reasonable volume of services to persons unable to pay therefor," 42 U.S.C. Sec. 291c(e)(2) (1982), as a result of their receipt of financial assistance under the Hill-Burton Act, 42 U.S.C. Sec. 291 et seq. (1982). See 42 C.F.R. Sec. 53.113(d)(2)(i)(B) (1980) (eligible Hill-Burton recipients required to participate in Medicaid)